IN THE MATTER OF: SHARON DENISE SMITH, Date of Birth: 6/2/70; CHRISTOPHER MICHAEL SMITH, Date of Birth: 12/12/72

No. 8114DC625

(Filed 2 March 1982)

1. **Parent and Child § 1 — termination of parental rights — statute used to define abandonment**

    The trial court did not err in referring to N.C.G.S. 7A-517 when defining "abandonment" as section 7A-278 referred to in 7A-289.32(2) was repealed and reference is now made to N.C.G.S. § 7A-517(21) in the N.C. Juvenile Code.

2. **Parent and Child § 1; Rules of Civil Procedure § 15.2 — amendment of complaint — additional ground for termination of parental rights**

    Petitioner was properly allowed to amend its complaint to add G.S. 7A-289.32(3) as a ground for termination of parental rights where petitioner's evidence and the testimony elicited by respondent on cross-examination brought the amendment within G.S. 1A-1, Rule 15(b), Amendments to Conform to the Evidence.

3. **Evidence § 29.2; Parent and Child § 1 — termination of parental rights — evidence within business records exception — testimony of social workers admissible**

    In a hearing to terminate parental rights, testimony of two social workers, who had not worked on respondent's case until after the petition to terminate rights had been filed, was competent even though the witnesses had no firsthand knowledge of the events that took place between 1970 and the date when they assumed responsibility of the case. Each had familiarized herself with the case history of the client based on the records kept by the department of social services, and these records were admissible under the business records exception to the hearsay rule.

4. **Parent and Child § 1 — termination of parental rights — sufficiency of evidence**

    The trial court's conclusion that respondent's rights to her children be terminated was supported by clear, cogent and convincing evidence where the evidence tended to show that respondent had been in continuous contact with the department of social services over nearly a ten-year period; that the department tried to stimulate respondent's initiative to contact her children through an intensive provision of services; and that respondent completely failed to maintain any meaningful contact with her children. N.C.G.S. § 7A-517(21) and N.C.G.S. § 7A-289.32(3).

5. **Parent and Child § 1 — termination of parental rights — statute constitutionally applied**

    In a proceeding to terminate parental rights, the applicable statutes were constitutionally applied where the evidence amply supported not one but several of the statutory grounds required to terminate parental rights. N.C.G.S. 7A-289.31(a).

**6. Parent and Child § 1 — termination of parental rights — indigent parent — costs of transcript to Legal Assistance Program**

The trial court erred in providing a copy of the transcript to counsel without cost to respondent in a proceeding to terminate parental rights where the Legal Services Corporation made a determination of indigency and undertook to represent respondent. The cost of the transcript should have been taxed to the North Central Legal Assistance Program.

APPEAL by respondent from *LaBarre, Judge*. Order signed 13 January 1981 in District Court, DURHAM County. Heard in the Court of Appeals 10 February 1982.

Respondent appeals from an order terminating parental rights with respect to her two minor children, Sharon Denise and Christopher Michael. The record reflects ten years of continuous efforts by petitioner in working with Miss Smith and the two children. However, because of the seriousness of the court's action in this case, we feel compelled to set out in some detail the facts giving rise to the decisions — facts which speak in stark language of the financial burden on the public and the physical dangers and emotional trauma to the children involved, when the right to parenthood is exercised without the concomitant ability and willingness to accept the responsibility.

Sharon Denise Smith was born out of wedlock on 2 June 1970. Her father executed an affidavit of paternity, but has never contributed to the child's support. He is presently serving three consecutive life sentences for convictions of kidnapping, rape, and armed robbery. Just prior to Sharon's birth, Miss Smith had been hospitalized for tuberculosis. She refused to sign a boarding home agreement so that the baby could be treated or remain separate from the mother during the incubation process for tuberculosis. In her first year Sharon was hospitalized for pneumonia and, after a second complaint was received concerning the baby's health, she was again hospitalized for severe diaper rash. She showed signs of neglect and deprivation. In an order dated 4 June 1971, Sharon was placed in the legal custody of the Durham County Department of Social Services, an action necessary upon the court's finding of neglect and the mother's failure to respond to services offered by Social Services or the Durham County Health Department.

Sharon has been living in foster homes since 1971. Miss Smith did not ask to visit, did not visit, and never saw her daughter between 1971 and 1977.

Christopher Michael Smith was born 12 December 1972. He was placed in the legal custody of the Durham County Department of Social Services by order dated 18 April 1973, after having been hospitalized for the treatment of burns on his thighs and legs. Miss Smith was unable to give a satisfactory explanation for the injuries. Christopher, too, was born out of wedlock and the putative father has not established paternity, legitimized him, or provided financial support. Christopher has been living in foster homes since 1973. Miss Smith did not see the child again until June 1980.

On 25 June 1979, Nancy Dunham, a social worker in the foster care unit of the Durham County Department of Social Services, instituted an action to terminate parental rights in order that the children might be placed in the full custody of the department for adoptive placement.

Nancy Berson testified at the termination hearing that she had become the active social worker on the Smith case in February of 1980. She was aware that the action to terminate parental rights had been filed but

> felt a need to make further effort because an action for termination of parental rights does not mean that termination will be granted; we have a responsibility to continue to try to work with the parent. We have no desire to see termination occur; it is not a goal of ours. If we can do anything to avert it, even at the last minute, we're going to do that.

Miss Berson set up three visits between Miss Smith and the children. Prior to this time she had written Miss Smith twelve letters. Miss Smith had missed seven appointments. Miss Berson testified that Miss Smith came to see her about public assistance. She did not ask about visits with the children. She did not mention the children. Miss Berson initiated the three visits. After the third visit, Miss Berson informed Miss Smith that "it was time for her to show some responsibility" and that the call regarding the next visit would have to be initiated by the mother. This the respondent failed to do.

In a further effort to assist Miss Smith, Miss Berson wrote up a basic plan which, if complied with, might ensure the return of the children to the mother. The plan included attending "parenting" classes, visiting the children, meeting with the social worker regularly, and undergoing testing. Miss Smith did not visit the children, did not attend "parenting" classes, although transportation was offered, and failed to meet with the social worker regularly. There was testimony that since the children had been placed together in the last foster home, Miss Smith has seen them at church.

Testimony indicated that the children did not know who their mother was, but that "it is not uncommon for children who have been in foster care to be confused about who their mother is"; that Sharon has been moved five times and Christopher has been moved three times; and that Sharon has spent ninety percent of her life in foster care and Chris ninety-seven percent of his. The children are both adoptable, although Sharon's emotional problems may make her more difficult to place.

Miss Smith's testimony included the following statements:

There has not been a time since 1971 that I haven't had a social worker that I could call if I needed help. I did not call any of the social workers in regards to seeing my children because during that time I did not have use of phone, even if I wanted to. The times I went to Social Services . . . I had to walk. Walking up there did not keep me from asking about my children. I do not know why I did not ask about them. . . . I wanted to get my life in order.

\* \* \* \*

I do not have any reason for not asking for the children to come back home with me or for me to visit with them, but I wanted them to.

. . . [Chris] was three months and has never seen me as his mother. Chris was in the hospital with burns and they did ask the court to terminate my rights, but the Judge said that he thought I made some effort and would not terminate my rights. He gave me another chance but I didn't take it.

Miss Smith is now thirty-five years of age. She has never been employed. In 1978 she was hospitalized for severe depression and later for "an overdose of aspirin."

*Thomas Russell Odom for petitioner appellee.*

*John C. Randall, Guardian Ad Litem, appellee.*

*North Central Legal Assistance Program, by Leowen Evans, for respondent appellant.*

MARTIN (Harry C.), Judge.

Respondent first contends that the trial court erred in failing to grant her motion to dismiss, arguing that petitioner "failed to submit sufficient evidence to establish a ground by which parental rights could be terminated." Respondent argues that (1) petitioner's witnesses had no first-hand knowledge of the facts in controversy; (2) petitioner relied extensively on inadmissible foster care records; and (3) petitioner relied upon inadmissible findings of fact from prior judicial proceedings. Respondent further argues that the court's conclusions of law were not supported by clear, cogent and convincing evidence, and finally that the termination of parental rights violated her right to family integrity without due process of law. We do not agree.

The statute provides in pertinent part:

> *Grounds for terminating parental rights.* — The court may terminate the parental rights upon a finding of one or more of the following:
>
> .  .  .  .
>
> (2) The parent has abused or neglected the child. The child shall be deemed to be . . . a neglected child within the meaning of G.S. 7A-278(4).
>
> (3) The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect, or without showing positive response within two years to the diligent efforts of a county department of social services . . . to encourage

the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

N.C. Gen. Stat. § 7A-289.32 (Cum. Supp. 1979).

[1]  We first direct our attention to respondent's contention that the court "used the wrong statute in defining 'abandonment.'" The court's reference to N.C.G.S. 7A-517 is entirely correct. As is pointed out in the Editor's Note to N.C.G.S. 7A-289.32 (1981), section 7A-278 referred to in 7A-289.32(2) was repealed and reference is made to the North Carolina Juvenile Code, including the following definition:

> (21) Neglected Juvenile. A juvenile who does not receive proper care, supervision, or discipline from his parent . . . or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare . . . ..

N.C. Gen. Stat. § 7A-517(21) (Cum. Supp. 1979).

This language tracks the language appearing in former N.C.G.S. 7A-278(4). Thus the definition of neglect, including abandonment, appeared in the statutes prior to the filing of this petition. The reference numbers were changed as a result of the recodification of the juvenile code.

[2]  Respondent also objects to the inclusion of N.C.G.S. 7A-289.32(3) as a ground for termination of her parental rights. The record shows that at the close of its evidence, petitioner moved to amend the complaint to add this statutory ground. The court allowed the motion pursuant to Rule 15 of the North Carolina Rules of Civil Procedure, finding that the allegations in the complaint put respondent on notice that the provisions in both N.C.G.S. 7A-289.32(2) and (3) would provide grounds for the termination. We find, too, that petitioner's evidence and the testimony elicited by respondent on cross-examination bring the amendment within N.C.R. Civ. P. 15(b), Amendments to Conform to the Evidence.

Based on the testimony contained in the record before us, we find that petitioner offered sufficient evidence to establish

grounds for termination of parental rights under both N.C.G.S. 7A-289.32(2) and (3). Respondent, however, challenges the admissibility of the testimony on three separate evidentiary theories.

[3]   Petitioner offered the testimony of Kathy Brock and Nancy Berson, both of whom were social workers with the Durham County Department of Social Services. Neither of the two witnesses had worked on the Smith case until after the petition had been filed. Thus, argues respondent, their testimony was incompetent on matters occurring prior to their first contact with respondent. While it is true that the witnesses had no firsthand knowledge of the events that took place between 1970 and when they assumed responsibility of the case, each had familiarized herself with the case history of the client based on the records kept by the department of social services. Those records were admissible under the business records exception to the hearsay rule. 1 Stansbury's N.C. Evidence § 155 (Brandis rev. 1973). Witness Brock testified that the records were made in the regular course of business, at or near the time of the transactions involved. Respondent's counsel moved for an order compelling petitioner to produce its files and records pertaining to the matter, which motion was granted. Respondent referred to the records in her cross-examination of the witnesses in order to elicit facts favorable to her position. Finally, the records are corroborative of stipulated facts and the testimony of the respondent herself. Respondent's counsel stipulated that the court might take judicial notice of the finding of neglect with respect to both children made by the previous trial court.

In short, the court was correct in recognizing that this case could not be decided in a vacuum. The procedural and factual history of the case was relevant and necessary to a full and fair determination of the issues.

[4]   Respondent argues that the trial court's conclusion that her rights to the children be terminated was not supported by clear, cogent and convincing evidence. We cannot agree. We consider respondent's continuous contact with the department of social services over nearly a ten-year period, its effort to stimulate her initiative through an intensive provision of services, and her complete failure to maintain any meaningful contact with the

children, clear evidence that respondent "willfully left the [children] in foster care for more than two consecutive years without showing . . . that substantial progress [had] been made . . . in correcting those conditions which led to the removal of the [children] for neglect." N.C. Gen. Stat. § 7A-289.32(3) (Cum Supp. 1979). In addition, we find clear evidence that respondent abandoned the children as contemplated by N.C.G.S. § 7A-517(21).

> "abandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . .
>
> "Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. *It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child . . . ."*

*In re Cardo,* 41 N.C. App. 503, 507-08, 255 S.E. 2d 440, 443 (1979) (emphasis ours).

Moreover, respondent failed to except to findings of fact 54 and 55. These findings are in the language of N.C.G.S. 7A-289.32, establishing grounds for terminating respondent's parental rights. By failing to except to the findings of fact, they are deemed to be supported by competent evidence and are conclusive on appeal. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590 (1962); *Ply-Marts, Inc. v. Phileman,* 40 N.C. App. 767, 253 S.E. 2d 494 (1979). Nevertheless, because respondent did except to conclusions of law 1 and 2, which are identical to findings of fact 54 and 55, we have made the foregoing analysis of the evidence.

We hold the findings of fact are supported by clear, cogent, convincing and competent evidence. They are, therefore, conclusive upon appeal. *Whitaker v. Everhardt,* 289 N.C. 260, 221 S.E. 2d 316 (1976); *General Specialties Co. v. Teer Co.,* 41 N.C. App. 273, 254 S.E. 2d 658 (1979). The findings sustain the conclusions of law and the judgment entered.

[5] Respondent's final argument that her constitutional right to family integrity and companionship of her children has been

violated is without merit. Respondent does not contend that the statute is unconstitutional, but that it was unconstitutionally applied in this case, because the evidence did not establish a statutory ground to terminate her parental rights. The constitutionality of the statute was upheld by this Court in *In re Biggers*, 50 N.C. App. 332, 274 S.E. 2d 236 (1981). *See also In re Clark*, 303 N.C. 592, 281 S.E. 2d 47 (1981). As detailed above, the evidence amply supports not one but several of the statutory grounds required to terminate parental rights. Through her own acts of neglect and inaction, respondent has never established a relationship with her children. The evidence overwhelmingly points to a total absence of family integrity since these children were born.

N.C.G.S. 7A-289.31(a) (Cum. Supp. 1979) provides:

> Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.

It is thus within the court's discretion to consider such factors as family integrity in making its decision of whether termination is in the best interests of the children. The children's best interests are paramount, not the rights of the parent. Sharon and Christopher have never known the security of a permanent home. The tragedy is theirs. Far from an abuse of discretion, the trial court's decision to terminate respondent's parental rights has afforded these children their only chance for a normal, happy family life.

[6] Petitioner raises a cross-assignment of error to the court's order providing a copy of the transcript to counsel without cost to respondent. The petition in the case was filed prior to the effective date of the amendment to N.C.G.S. 7A-451(a) which now entitles indigent parents to appointed counsel in termination proceedings. For that reason the federally funded Legal Services Corporation undertook to represent respondent, and it was that organization that made a determination of indigency in the first instance. The trial court's decision to permit respondent to proceed in forma pauperis was, moreover, based on a simple asser-

tion of poverty, without inquiry as to her financial status. We agree that the costs of the transcript should be taxed to the North Central Legal Assistance Program.

We affirm the trial court's decision to terminate respondent's parental rights. The court's order respecting the costs of the transcript is vacated.

Affirmed in part; vacated in part.

Chief Judge MORRIS and Judge VAUGHN concur.