THORNBURG, Judge.
While respondents have maintained separate appeals, for expediency and because the appeals involve common questions of law, we consolidate these appeals, see N.C.R. App. P. 40 (Court on its own initiative may consolidate cases which involve common questions of law), and dispose of the appeals in one opinion.
Respondents are the parents of the minor child, C.B. C.B. was born on 17 December 2001. On 10 January 2002, respondent-father took C.B. to Goldsboro Pediatrics, P.A., to have his right arm examined due to persistent swelling. Respondent-father informed the doctor that the swelling had been present for about five days. The child's arm was grossly swollen and it was obvious, without x-rays, that his arm was broken. After obtaining a full set of bodyx-rays on C.B., the doctor determined that the right arm was definitely broken and that there was a second newer fracture to the child's lower left leg. C.B. was placed in the custody of the Wayne County Department of Social Services ("DSS") shortly after the 10 January 2002 visit to the doctor.
Respondents originally told the doctor that they did not know how the injury occurred. Later, respondents told the doctor that C.B. had been injured when an older sibling jumped on him. However, the doctor testified that he had never seen a case where one child jumping on another had caused such severe injuries. The doctor concluded that both injuries were non-accidental and were indicative of C.B. having been violently shaken.
Respondents began attending parenting classes through the Lighthouse, Wayne County's domestic violence/sexual assault crisis center. Respondent-father was also enrolled in Project Lifestyle, a program which counsels domestic abusers, at the Lighthouse. Respondents were also involved in various counseling sessions, together and separately, and involved in marriage counseling.
In April of 2002, respondent-mother contacted the Lighthouse to inquire whether anyone there could look after her older child because she was afraid respondent-father would injure the child. Two days later, respondent-mother called the Lighthouse program director, George Marsh, at his home and asked him to come pick her and the older child up from the police station in Statesville, North Carolina. Respondent-mother said that she and respondent-father had argued and that he had left her in Statesville while hedrove on to Illinois. During the trip back to Wayne County, respondent-mother told Marsh that respondent-father had admitted to her that he had injured C.B. because C.B. would be unable to tell anyone. Respondent-mother became a resident of the Lighthouse shelter at that point. Due to respondent-mother's residence in the Lighthouse shelter, respondent-father was discharged from all programs conducted by the Lighthouse.
Respondent-mother stayed in the shelter with the older child until late May when she reunited with the respondent-father. At that point, the older child was placed in DSS custody. The older child was eventually returned to his natural father in Mexico, who had legal custody of the child. Around 4 July 2002, respondent-mother returned to the shelter at the Lighthouse due to her fear that respondent-father was going to harm her. However, respondents again reunited in late July 2002.
The petition to terminate respondents' parental rights was filed on 10 July 2002. On 19 August 2002, respondent-father made a motion for a continuance on the grounds that he needed more time to conduct discovery and to protect his rights against self-incrimination. A hearing on the motion was conducted on 22 August 2002. At that hearing, respondent-mother did not object to a continuance. The continuance was denied. A hearing was conducted on the petition to terminate on 26 August 2002, at which point respondents renewed the motion for a continuance. The motion for a continuance was denied and respondents' rights were terminated in an order entered 9 September 2002. Respondents appeal and argue: (1) that the denial of the respondents' motion to continue the hearing was an abuse of discretion, (2) that the order's findings of fact are not supported by clear, cogent and convincing evidence, (3) that the order's findings of fact do not support the conclusions of law, and (4) that the court erred in terminating their parental rights. We disagree and affirm.
I. Motion to Continue
Respondents each assign as error the trial court's denial of their motion for a continuance. In support of their motion, respondents argued that they needed more time to conduct discovery, to hire new counsel and to protect their rights against self-incrimination. Respondents also assert that the trial court failed to rule on the grounds set forth in the motion to continue.
"In passing on the motion [to continue] the trial court must pass on the grounds urged in support of it . . . ." Shankle v. Shankle, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). In the order terminating respondents' parental rights, the trial court made the following findings:
3. That at the call of the case the parents renewed their motion to continue this matter because they wanted to secure privately retained counsel, to secure a medical test of the child concerning Soft Bone Syndrome and because they maintain that evidence presented in this matter would prejudice them in pending criminal cases.
4. That similar motions had been made and denied at the most recent regular term of Juvenile Court.
5. That the motion for continuance made by the parents of the juvenile was denied.
These findings clearly indicate that the trial court did consider the grounds advanced in support of the motion and adequately ruled on those grounds. Respondents' argument fails.
A trial court's ruling on a motion to continue is not reversed absent an abuse of discretion. State v. Stitt, 147 N.C. App. 77, 80, 553 S.E.2d 703, 706 (2001). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it." In re Humphrey, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003), (quoting Doby v. Lowder, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984)). N.C. Gen. Stat. § 7B-803 provides for continuances in juvenile proceedings:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-803 (2003). We find nothing in the record that would indicate that the trial court requested or required additional information to address the best interests of the child. A continuance for the gathering of further discovery by the parties is proper "'if there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts,' whereas 'a mere intangible hope that something helpful toa litigant may possibly turn up affords no sufficient basis for delaying a trial.'" Stitt, 147 N.C. App. at 80, 553 S.E.2d at 706, (quoting State v. Pollock, 56 N.C. App. 692, 693-94, 289 S.E.2d 588, 589, disc. review denied, 305 N.C. 590, 292 S.E.2d 573 (1982)) (emphasis in original). In the instant case, respondents presented no facts that would support a belief that the test for soft-bone syndrome might yield results favorable to the respondents. The trial court did not abuse its discretion in denying the motion on this ground.
Respondents were each appointed attorneys by the trial court on 11 July 2002. Both attorneys were present and prepared to go to trial on the date of the hearing, 26 August 2002. Respondents have not shown how having new counsel was necessary for the proper administration of justice or in C.B.'s best interest. Respondents have not shown sufficient grounds for a continuance with this argument. We do not find an abuse of discretion.
Finally, respondents asserted that the motion to continue should have been granted to preserve their constitutional privilege against self-incrimination. In their brief, respondents argued that they did not testify at the termination hearing out of fear of adversely affecting the outcome of the criminal case, thus precluding their ability to present their case as they would have liked. Accordingly, respondents assert that they were denied their right to testify on their own behalf and their right not to be compelled to incriminate themselves. The constitutional privilege against self-incrimination applies in both civil and criminalproceedings whenever a person's answer might tend to subject him to criminal responsibility. Allred v. Graves, 261 N.C. 31, 134 S.E.2d 186 (1964). Our Supreme Court addressed a similar argument where an accused had two pending criminal charges and upheld the trial court's denial of the accused's motion to continue. See State v. White, 340 N.C. 264, 457 S.E.2d 841, cert. denied, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). While the instant case involves pending civil and criminal actions, we find the principles enunciated in White instructive. Guided by White and the recognition that meeting the permanency needs of juveniles cannot be compromised every time respondents have pending criminal charges, we do not find, on the current record, the trial court's denial of respondents' motion to continue to be an abuse of discretion on the self-incrimination grounds advanced by the respondents.
We are unable to conclude that the trial court's actions in denying the continuance amounted to an abuse of discretion. Respondents' assignment of error fails.
II. Order Terminating Parental Rights
Respondents next argue that the trial court erred in finding sufficient grounds to terminate their parental rights and in terminating their rights. We disagree.
Termination of parental rights proceedings are conducted in two phases: adjudication and disposition. See In re Brim, 139 N.C. App. 733, 741, 535 S.E.2d 367, 371 (2000). During the adjudication phase, the petitioner has the burden of proving by clear, cogent and convincing evidence that one or more of the statutory groundsfor termination exist. In re Nolen, 117 N.C. App. 693, 698, 453 S.E.2d 220, 223 (1995). The standard for appellate review of the trial court's conclusion that grounds exist for termination of parental rights is whether the trial judge's findings of fact are supported by clear, cogent and convincing evidence, and whether these findings support its conclusions of law. In re Huff, 140 N.C. App. 288, 292, 536 S.E.2d 838, 841 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). If there is competent evidence, the findings of the trial court are binding on appeal. In re Smith, 56 N.C. App. 142, 149, 287 S.E.2d 440, 444, cert. denied, 306 N.C. 385, 294 S.E.2d 212 (1982).
Respondents both contend that the trial court's findings of fact were not supported by clear, cogent and convincing evidence. Having reviewed the record, we disagree. In the order, the trial court made detailed findings concerning the injury to C.B. that necessitated his removal from the respondents' custody. The order also has detailed findings concerning respondents' marital situation, their attempted progress in regaining custody of C.B., respondent-mother's residence at the Lighthouse shelter and the respondents' counseling. These findings were all supported by the testimony of C.B.'s treating physician, the director of the Lighthouse, the respondents' counselors and DSS social workers. Respondents' assignment of error fails.
Respondents further argue that the findings of fact did not support the conclusion that grounds to terminate their parental rights existed. In the order, the trial court concluded that respondent-mother had neglected C.B. and that respondent-father had neglected and abused C.B. A neglected juvenile is one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law." N.C. Gen. Stat. § 7B-101(15) (2003). When evidence of neglect prior to losing custody of a child is admitted, the trial court must also consider any evidence of changed conditions, in light of the evidence of prior neglect and the probability of a repetition of neglect. In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). An abused juvenile is "any juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker . . . inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means[.]" N.C. Gen. Stat. § 7B-101(1)(a) (2003).
The trial court made extensive findings regarding the child's previous injuries and the fact that they were not accidental injuries. There were findings regarding respondents' conflicting and changing stories about how the injuries occurred. The order also addressed the instability of respondents' marriage and their inability to complete recommended classes and counseling. There were also findings regarding the therapists' opinions that respondents would be unable to maintain a safe home environmentgiven respondent-father's controlling personality and respondent-mother's dependence on respondent-father. Further, there were findings regarding respondents' intention to leave the county if they were to regain custody of C.B. These findings were illustrative of the situation in the home. These findings are also sufficient to show that the circumstances surrounding the original neglect had not changed and that there was a probability of future neglect. The findings of fact of the trial court support the court's conclusion that the respondent-mother neglected C.B. and that the respondent-father neglected and abused C.B. Respondents' assignment of error fails.
Respondents also argue that the trial court abused its discretion in terminating their parental rights to C.B. Respondents assert that because DSS did not have an adoptive placement for C.B. at the time of the termination and because DSS did not conduct the proposed home study at the paternal grandmother's home in Illinois, it was not in C.B.'s best interest to terminate respondents' parental rights.
If the petitioner meets its burden of proving that there is at least one of the statutory grounds to terminate parental rights, the trial court then moves to the disposition phase and must consider whether termination is in the best interests of the child. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). "Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating theparental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2003). The trial court's decision to terminate parental rights is reviewed by an abuse of discretion standard. In re Brim, 139 N.C. App. at 745, 535 S.E.2d at 374.
In these cases, the best interests of the child, not the rights of the parent are paramount. In re Smith, 56 N.C. App. at 150, 287 S.E.2d at 445. Sufficient evidence was presented for the trial court to determine that C.B. had been neglected by respondent-mother and neglected and abused by respondent-father. The trial court did not abuse its discretion in concluding that termination of respondents' parental rights was in the best interests of the child. Respondents' assignment of error fails.
In conclusion, we hold that the trial court did not abuse its discretion in denying respondents' motions for a continuance and that the trial court did not err in terminating both respondents' parental rights.
Affirmed.
Judges TIMMONS-GOODSON and LEVINSON concur.
Report per Rule 30(e).