IN THE MATTER OF: JEREMY BRIM

No. COA99-1230

(Filed 29 August 2000)

**1. Termination of Parental Rights— findings and conclusions—written order—recitation in open court**

The trial court did not err in a parental rights termination case by including two findings in its written order that were not included in the trial court's recitation of its decision in open court, because: (1) N.C.G.S. § 7A-651 does not require the trial judge to announce in open court its findings and conclusions, but instead the terms of the disposition must be stated with particularity; (2) the two pertinent findings relate to the adjudication by the trial court under N.C.G.S. § 7A-289.32 to show that grounds for termination of respondent mother's parental rights existed at the time of the hearing, and do not relate to the court's disposition under N.C.G.S. § 7A-289.31; and (3) the order entered by the trial court is in general conformity with the disposition announced in open court.

**2. Evidence— lay opinion—psychiatrist**

Although the trial court erred in a parental rights termination case by considering certain letters written by one of respondent mother's treating psychiatrists who was not tendered as an expert witness stating that respondent had experienced micro psychotic episodes since it was a medical diagnosis beyond the allowable scope of testimony by a non-expert medical witness under N.C.G.S. § 8C-1, Rule 701, the error was not prejudicial because: (1) there is no indication that the trial court relied on opinions in the letter to support its conclusion that grounds existed at the time of the termination hearing to terminate respondent's

**IN RE BRIM**

[139 N.C. App. 733 (2000)]

parental rights; and (2) there was substantial lay and medical evidence to support the findings of fact and conclusions of law.

### 3. Termination of Parental Rights— grounds—clear, cogent, and convincing evidence

The trial court did not err by finding that grounds existed under N.C.G.S. § 7A-289.32(2), (3), (4), and (7) to terminate respondent mother's parental rights, because there was clear, cogent, and convincing evidence that respondent's neglectful conduct continued and existed at the time of the termination hearing.

### 4. Termination of Parental Rights— best interests of child

The trial court did not abuse its discretion in its determination that it would be in the best interest of the child to terminate respondent mother's parental rights, because even though there was testimony that there was a reasonable hope that the family could be reunited, the evidence tended to show that after almost two years of diligent efforts by DSS, respondent was not able to demonstrate that she could adequately provide for the needs of the child.

Appeal by respondent mother from a judgment entered 8 October 1998 by Judge Laurie Hutchins in Forsyth County District Court. Heard in the Court of Appeals 6 June 2000.

Merri Elizabeth Mueller (respondent) appeals from a judgment terminating her parental rights to Jeremy Brim, her minor child. Upon finding that grounds existed under N.C. Gen. Stat. § 7A-289.32(2), (3), (4), and (7) to terminate respondent's parental rights, the trial court concluded that it was in the best interest of the child to terminate her parental rights.

At the termination hearing, the Forsyth County Department of Social Services (DSS) presented evidence which tended to show that Merri Mueller has been diagnosed with borderline personality disorder for which her doctors have prescribed medication. Jeremy was born on 8 November 1995 to respondent and Peter Brim. However, Mr. Brim lived with respondent and the child less than one month. Subsequent to Mr. Brim's departure, respondent's boyfriend, Robert Roy Evans, came to live with respondent and Jeremy.

In March 1996, the child was taken to the hospital and diagnosed with a spiral fracture of his upper arm. Jeremy was in the care of his

mother at the time of the injury. DSS was notified that the cause of the injury was determined to be some sort of trauma that could not have been self-inflicted. From March 1996 until mid-July 1996, DSS worked with respondent on a voluntary basis. On 18 July 1996, DSS filed a petition alleging that Jeremy was a neglected child and the court ordered him placed in the non-secure custody of DSS until the adjudication of the matter.

At the adjudicatory hearing held 18 December 1996, the trial court concluded that Jeremy was neglected within the meaning of N.C. Gen. Stat. § 7A-517(21), and ordered that he remain in the custody of DSS. In an effort to facilitate reunification of the child with respondent, the court also ordered that respondent demonstrate an ability to control her anger. The trial court further ordered that respondent continue in individual therapy in order to help her focus on the needs of the child, rather than her own needs; that respondent learn to protect the child from violence in the home; that respondent take her medication as prescribed; and that respondent become able to maintain her basic household expenses. Respondent was also ordered to refrain from harassing Jeremy's caretakers and others involved with the case, to attend all of the child's pediatric appointments, and to enter into a written plan with objectives aimed at establishing a permanent plan for her child.

Review hearings were held in January, September and December of 1997. At these hearings respondent was ordered to attend Structural Family Therapy with her boyfriend in order to address various issues, including violence in their relationship; adhere fully to the items specified in the prior service agreement; pay child support of $127.00 each month (later reduced to $63.50 each month); and cooperate with extensive family evaluation in order to assess her ability to raise Jeremy. On 27 April 1998, DSS filed a petition to terminate the parental rights of respondent and Peter Brim.

At the termination hearing, Mr. Brim voluntarily relinquished his parental rights. DSS offered testimony regarding respondent's level of cooperation and behavior during the period it offered services to respondent. Ms. Suzette Hager, a social worker with the Forsyth County Department of Social Services, testified that, although respondent loved Jeremy, respondent continued to be unable to apply things learned in parenting class to her interactions with the child. Despite Ms. Hager's efforts, respondent's home was not child-proofed. Ms. Hager also stated that respondent focused more on herself than on the child, became frustrated with the child during vis-

IN RE BRIM

[139 N.C. App. 733 (2000)]

itations, was not aware of the child's "cues" such as indications that he did not need to be fed, and had difficulty controlling Jeremy's behavior. Ms. Hager further testified that respondent had exhibited belligerent and threatening behavior towards her. She noted that Jeremy had been in foster care for 23 months at the time of the termination hearing and was bonded with his foster family. Ms. Hager recommended that respondent's parental rights be terminated despite her love for her son because she could not provide an appropriate home for him.

Various psychiatrists and psychologists who treated or evaluated Ms. Mueller also testified. Dr. Chad Stevens, one of respondent's treating psychiatrists, testified that he had difficulty keeping respondent on medication to treat her condition because she would either refuse to take the medication or she would independently decide to quit taking it. Dr. Stevens further testified that respondent made threats against both him and DSS employees.

Dr. Howard T. Bosworth, an expert in clinical psychology, conducted a child custody evaluation. He noted that respondent has difficulty comprehending Jeremy's level of development. Dr. Bosworth further testified that his primary concern was respondent's level of stability and her ability to maintain any stability. He questioned whether respondent could stay on medication without supervision. His ultimate opinion was that respondent is not capable of providing for the general welfare and supervision of Jeremy and that the incapacity would not significantly change in the foreseeable future.

Dr. Frank B. Wood, an expert in neuropsychology, conducted a series of tests on Ms. Mueller as part of a psychological evaluation. He testified that in his opinion a child left in the care of respondent would be at risk. His opinion was based in part on his finding that respondent has a tendency to act out hostility and aggression, so that pharmacological treatment would be required for the foreseeable future. Dr. Wood also testified that he believed respondent to be a danger to anyone who made her angry.

Upon consideration of all the evidence presented, the trial court determined that grounds existed to terminate the parental rights of respondent, and that it would be in the best interest of the child that respondent's parental rights be terminated. Respondent appealed.

IN RE BRIM

[139 N.C. App. 733 (2000)]

*Forsyth County Department of Social Services, by Assistant County Attorney Theresa A. Boucher, for petitioner appellee.*

*Lisa S. Costner for Merri Mueller respondent appellant.*

*Teeter Law Firm, by Kelly S. Lee, for Guardian ad Litem respondent appellee.*

HORTON, Judge.

Respondent contends that (I) the written termination order contained certain findings of fact not stated by the trial court in its oral entry of the order in open court; (II) grounds did not exist to terminate her parental rights; (III) termination of her parental rights was not in the best interest of the child; and (IV) certain letters written by Dr. Chad Stevens were erroneously received and considered as evidence. After careful consideration of the entire voluminous record, we affirm the judgment of the trial court.

We note initially that the North Carolina Juvenile Code, including provisions relating to the termination of parental rights, was extensively revised and renumbered as Chapter 7B of our General Statutes, effective 1 July 1999. 1998 N.C. Sess. Laws ch. 202. The petition for termination of parental rights in the case before us was filed on 27 April 1998, prior to the effective date of the revisions. Therefore, all references in this opinion are to the provisions of Chapter 7A then in effect.

I.

[1] First, respondent argues that the written order terminating her parental rights contains language not included in the trial court's recital in open court of his decision in this matter. Here, after a detailed recital in open court of its findings, which consumed more than 25 pages of the transcript, the trial court concluded that "grounds exist pursuant to N.C.G.S. § 7-A-289.32 [sic] to terminate parental rights under parens (2), (3), (4), (5), and (7)," and further concluded that termination was in the best interest of the child. The written order entered by the trial court contained a similar dispositional provision, and its detailed written order generally conforms with the oral statements made by the trial court.

Respondent argues, however, that the written order signed and entered by the trial court contained at least two findings not recited in open court. First, Finding of Fact No. 14 in the written order stated

in part that "[s]ince December 18, 1996, Merri Mueller has continued to neglect Jeremy Brim by failing to complete the terms of the Juvenile Court's Order which was specifically designed to alleviate the conditions which brought the child into foster care and facilitate reunification." Second, Finding of Fact No. 62 in the written order stated that "[p]lacement of Jeremy Brim into the care of Mary [sic] Mueller would result in a probability of a repetition of neglect."

Respondent argues that by adding additional findings to the oral recital of its order, the trial court violated N.C. Gen. Stat. § 7A-651, which provides that in juvenile cases the

> dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The judge shall state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind, duration and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested.

N.C. Gen. Stat. § 7A-651 (1995). We have previously held that this statute "does not require the trial judge to announce in open court his findings and conclusions . . . ." Instead, "the *terms* of the disposition [must] be stated in open court with 'particularity.' " *Matter of Bullabough*, 89 N.C. App. 171, 179, 365 S.E.2d 642, 646 (1988).

Having carefully reviewed both the oral and written versions of the trial court's termination order, we hold that the trial court did not err. First, the findings about which respondent complains relate to the *adjudication* by the trial court pursuant to the provisions of N.C. Gen. Stat. § 7A-289.32 (1995) that grounds for termination of respondent's parental rights existed at the time of the hearing, not to the court's *disposition* pursuant to N.C. Gen. Stat. § 7A-289.31. N.C. Gen. Stat. § 7A-561 (1995), on which respondent relies, is a part of Article 41 of Chapter 7A and relates to dispositional orders entered in cases where juveniles have been adjudicated to be delinquent, undisciplined, abused, neglected, or dependent. Article 24B of Chapter 7A dealt with proceedings to terminate parental rights.

In support of her position, respondent cites *In re Bullabough*, but *Bullabough* involved a juvenile adjudicated to be delinquent, not a termination of parental rights. Even assuming, however, that N.C. Gen. Stat. § 7A-561 applied to the entry of dispositional orders in termination cases, the order entered by the trial court in this case is in

IN RE BRIM

[139 N.C. App. 733 (2000)]

general conformity to the disposition announced in open court. At all relevant times, N.C. Gen. Stat. § 7A-289.31(a) entitled "Disposition," provided that

[s]hould the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.

Unlike N.C. Gen. Stat. § 7A-651, there is no requirement in N.C. Gen. Stat. § 7A-289.31(a) that the court orally state "with particularity" the exact terms of the disposition.

Here, following a lengthy and complicated termination trial with a transcript of more than 1,000 pages, the able trial court weighed the evidence, then recited forty detailed findings of fact in open court, made conclusions of law, and decreed the termination of respondent's parental rights. The written order later entered does not differ in substance from that announced in open court. This assignment of error is overruled.

## II.

[2] Next, respondent assigns error to the trial court's consideration of certain letters written by Dr. Chad Stevens, a Resident in Psychiatry at Baptist Hospital. Respondent argues that the letters contained opinions that should not have been considered by the court because Dr. Stevens was not tendered as an expert witness. Specifically, respondent challenges Finding of Fact No. 16 in the Order terminating respondent's parental rights, in which the trial court stated that

[a]t a periodic review hearing on January 23, 1997, Court reviewed a letter from Dr. Stevens, Ms. Mueller's psychiatrist on her progress. Dr. Stevens noted that she had to move out of her home, and had become agitated, and claimed she was being abused by a wide variety of people. Several "micro psychotic" incidents occurred where there was impaired reality, poor judgment, and that she really believed she was being abused.

Respondent argues that Rule 701 of the N.C. Rules of Evidence limits the scope of testimony given by one not tendered as an expert to that "(a) rationally based on the perception of the witness and (b)

helpful to a clear understanding of his testimony . . . ." N.C. Gen. Stat. § 8C-1, Rule 701 (1992). Respondent argues that Dr. Stevens' statement in his letter of 19 January 1997 (the letter) that respondent had experienced "micro psychotic" episodes was a medical diagnosis beyond the allowable scope of testimony by a non-expert medical witness.

A careful review of the record and transcript in this case reveals that Dr. Stevens' 19 January 1997 letter was received in evidence by the trial court at the 23 January 1997 review hearing. Following the 23 January 1997 hearing, Judge Spivey orally entered an Order which was reduced to writing and signed by him on 3 February 1997. Judge Spivey's Order recited, in part, that "[t]he Court received a letter from Dr. Chad Stevens, [respondent's] psychiatrist as to her progress." There is no indication in the record that there was any objection to Judge Spivey's consideration of the letter from Dr. Stevens.

Further, Dr. Stevens identified the letter, marked as Petitioner's Exhibit 5, during his testimony at the termination hearing, and recalled that the letter was prepared by him at the request of Mr. Elliott, then counsel for respondent. Respondent objected to the introduction of the letter into evidence on the grounds that Dr. Stevens had not been qualified as an expert, to which counsel for petitioner responded that the trial court had already agreed to take judicial notice of everything in the juvenile court file. Based on the statement of counsel for petitioner the trial court allowed the letter to be introduced into evidence. However, nothing in the transcript of the proceedings below indicates that the trial court agreed to take notice of the entire juvenile file. It appears, therefore, that the trial court erroneously admitted the January 1997 letter from Dr. Stevens based on a misstatement by counsel for petitioner. We do not agree, however, that the error was prejudicial in this case.

Apparently, it is not disputed that Dr. Stevens' letter of 19 January 1997, admitted as Petitioner's Exhibit Number 5, is authentic and was admitted into evidence at the 23 January 1997 review hearing. The trial court merely summarized the contents of the letter in its termination order, as a part of its meticulous recitation of the history of the case. There is no indication, however, that the trial court relied on opinions in the letter to support its conclusion that grounds existed *at the time of the termination hearing* to terminate respondent's parental rights. Further, there was substantial lay and medical evidence in the record to support the findings of fact and conclusions of law made by the trial court. Therefore, even assuming the trial court

erred in the admission of Dr. Stevens' 19 January 1997 letter, we cannot find that the error was prejudicial to respondent in light of the overwhelming evidence supporting the trial court's decision. Thus, this assignment of error is overruled.

## III.

[3] Respondent next argues that the trial court erred in finding that grounds existed to terminate her parental rights. Termination of parental rights is a two-stage proceeding. At the adjudication stage the petitioner must show by clear, cogent and convincing evidence that grounds exist to terminate parental rights. *In Re Young*, 346 N.C. 244, 485 S.E.2d 612 (1997). If one or more of the grounds listed in N.C. Gen. Stat. § 7A-289.32 are shown, then the court moves to the dispositional stage "to determine whether it is in the best interest of the child to terminate the parental rights." *Id.* at 247, 485 S.E.2d at 615.

Here, the trial court found that grounds existed under N.C. Gen. Stat. § 7A-289.32(2), (3), (4) and (7) to terminate respondent's parental rights to Jeremy. N.C. Gen. Stat. § 7A-289.32 (1995). We must first determine whether there is clear, cogent and convincing evidence establishing one or more of these statutory grounds before we review the trial court's disposition.

N.C. Gen. Stat. § 7A-289.32 provides that

> [t]he court may terminate the parental rights upon a finding of one or more of the following:
>
> * * * *
>
> (2) The parent has abused or neglected the child. The child shall be deemed to be abused or neglected if the court finds the child to be an abused child within the meaning of G.S. 7A-517(1), or a neglected child within the meaning of G.S. 7A-517(21).

N.C. Gen. Stat. § 7A-289.32(2) (1995). "Neglect" is defined in N.C. Gen. Stat. § 7A-517(21) (1995) as

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's

welfare; or who has been placed for care or adoption in violation of law.

*Id.*

"[A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *In Re Ballard*, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). However, such prior adjudication, standing alone, will not suffice where the natural parents have not had custody for a significant period prior to the termination hearing. *Id.* Therefore, the court must take into consideration "any evidence of changed conditions in light of the evidence of prior neglect and *the probability of a repetition of neglect.* The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* at 715, 319 S.E.2d at 232 (citation omitted) (first emphasis added).

In this case the trial court specifically found that

14. Merri Mueller has neglected Jeremy Brim. On December 18, 1996, Jeremy Brim was adjudicated to be a neglected child within the meaning of G.S. 7A-517(21). Since December 18, 1996, Merri Mueller has continued to neglect Jeremy Brim by failing to complete the terms of the Juvenile Court's Order which was specifically designed to alleviate the conditions which brought the child into foster care and facilitate reunification. Ms. Mueller has:

a.) Failed to demonstrate an ability to control her anger,

b.) Failed to refrain from harassing her child's caregivers and using law enforcement in an inappropriate manner,

c.) Failed to utilize the concepts learned in Structured Family therapy to insure a stable home environment for Jeremy Brim to return,

d.) Failed to maintain suitable stable housing free of the risk of eviction,

e.) Failed to maintain full-time employment,

f.) Failed to demonstrate financial responsibility,

g.) Failed to focus on and provide for Jeremy's needs,

h.) Failed to visit with the child on a regular visitation schedule,

i.) Failed to provide the Department of Social Services with the names of any relatives who could provide care for Jeremy,

j.) Failed to pay court ordered child support for the care and maintenance of Jeremy Brim.

These findings are fully supported by the evidence of record. The testimony of Drs. Stevens, Bosworth and Wood corroborate the trial court's finding regarding respondent's anger management skills. Testimony received from Mr. Robert Evans, respondent's live-in boyfriend, supports the court's finding regarding the financial situation of respondent. Mr. Evans testified that at the time of the hearing he and respondent were living at a motel; that they had been involved in arguments that developed into physical encounters before, during, and after undergoing Structural Family Therapy; and that he believed their living situation was worse at the time of the hearing than it was when the child was removed from the home because they had no secure place to live and no means of transportation.

Ms. Hager of DSS testified that respondent continued to harass Jeremy's caretakers, failed to demonstrate financial responsibility, could not focus properly on Jeremy's needs, missed scheduled visitations, and did not keep DSS informed of changes in her circumstances. Evidence that respondent's neglectful conduct continued, and existed *at the time of the termination hearing*, complied with the *Ballard* decision. *See also In Re Young*, 346 N.C. 244, 485 S.E.2d 612 (1997).

In light of our holding that the trial court did not err in finding that grounds exist to terminate respondent's parental rights under N.C. Gen. Stat. § 7A-289.32(2), we need not discuss the remaining three grounds for termination asserted by petitioner.

IV.

[4] Finally, respondent assigns error to the trial court's determination that it would be in the best interest of the child to terminate respondent's parental rights. Even though the trial court found that one or more grounds existed which would warrant termination of respondent's parental rights, the trial court was not required to terminate her rights if the best interest of the child dictated otherwise. N.C. Gen.

Stat. § 7A-289.31 (1995); *In Re Becker*, 111 N.C. App. 85, 431 S.E.2d 820 (1993); *In Re Smith*, 56 N.C. App. 142, 287 S.E.2d 440, *cert. denied*, 306 N.C. 385, 294 S.E.2d 212 (1982) (stating that the best interest of the child is paramount).

Respondent offered the testimony of Dr. Nawar M. Alnaquib, who testified as an expert in general medicine and psychiatry, pediatrics and child development. Dr. Alnaquib testified that she had been treating respondent since October 1997, that respondent was diagnosed with borderline and personality disorder, and that she treated respondent by changing her medication. Dr. Alnaquib testified that respondent had shown improvement over the course of treatment, and opined that if respondent remained compliant with her medication and therapy regimen, and if respondent was given a good support system, she could care for Jeremy. Dr. Alnaquib testified that respondent had not developed a close relationship with Jeremy, and recommended that the proceeding be delayed for that purpose. Dr. Alnaquib's supervisor, Dr. Wayne Denton, testified that with medication, therapy, and a support group, respondent could maintain a job and raise a family.

Respondent argues that, because of the improvements noted by Dr. Alnaquib, the court should have found that there was a "reasonable hope" that the family could be reunited. However, we cannot say that the trial court abused its discretion in ordering the termination of respondent's parental rights. While we are mindful of the perceived improvements in respondent's mental condition, we are also mindful that the evidence tended to show that after almost two years of diligent efforts by DSS, respondent was not able to demonstrate that she could adequately provide for the needs of Jeremy. We find particularly relevant the testimony of Ms. Jane Malpass and the findings based thereon.

Ms. Malpass is contractually employed by the North Carolina Division of Social Services as a Child Welfare Consultant, and testified as an expert in child development, child development permanency planning, foster care placement and social work practice. She testified to the diligent efforts of DSS to reunite respondent with her child. Ms. Malpass also testified regarding the effect of any further delay on a permanent placement of young Jeremy, given his age and close bond to his foster family. She stated that further delay would be detrimental because children Jeremy's age "are beginning to feel some real fears about separation in general. . . . Children who are removed from their homes at between the ages of two and four show

the most serious effect as adults." Ms. Malpass further testified that given Jeremy's positive relationship with his foster mother, the unlikelihood of his return to his natural mother in the near future, and his current stage of development, he should be cleared for adoption by his foster family.

Based on the foregoing findings and testimony, we cannot say that the trial court abused its discretion in finding and concluding that it was in Jeremy's best interest to terminate respondent's parental rights. Therefore, this assignment of error is overruled.

In conclusion, we find no prejudicial error in the proceeding to terminate respondent's parental rights. The order entered by the trial court is affirmed.

Affirmed.

Judges GREENE and HUNTER concur.