BRYANT, Judge.
A.G.[1] (respondent-mother) appeals the 22 September 2004 termination of her parental rights of T.N.W. (thirteen-year-old daughter); T.T.W. (twelve-year-old son); and T.N.W. (eleven-year-old daughter).
The children were placed in foster care 5 April 2002. At that time, respondent and her children had lived in North Carolina for less than three weeks. The trial court found that the family did not have housing or significant means for support and that respondent had not been able to obtain shelter and food for her family.
At the initial adjudication and disposition hearing, the trial court identified steps that respondent needed to take before the court would consider returning the children to her care. The steps included finding stable housing, maintaining utilities and paying bills, earning sufficient income to meet the family's basic needs, demonstrating the ability to manage money, providing pay stubs to verify income, providing contact information with respect to a landlord, visiting her children on a bi-weekly basis, refusing to allow the children's father to live in the home until he developed a case plan, and cooperating with all efforts needed to ensure that her children be enrolled in school. Respondent was also ordered to provide suitable sleeping arrangements, to obtain suitable refrigerator and telephone, to follow up with Wake County Mental Health, and to always be truthful with Wake County Human Services and with the Guardian ad Litem.
Between 20 April 2002 and March 2003, respondent had lived in Youngsville, but was evicted due to non-payment of rent. Respondent moved to Wake Forest between May 2003 and the time of the August 2004 termination hearing. At the time of the hearing, she had rental arrearages in the amount of $2,225.00. The trial court made numerous findings and conclusions, including that although respondent had "great love and affection for her children, the children have had a tumultuous life that they shouldn't have to bear." On 22 September 2004, respondent's parental rights were terminated. Respondent appeals.
Respondent raises four issues on appeal: whether the trial court erred (I) in concluding respondent neglected her children; (II) in concluding respondent left her children in foster care for more than twelve months; (III) in finding it was in the children's best interest to terminate respondent's parental rights and (IV) in making findings of fact that were unsupported by clear, cogent and convincing evidence.
I
Respondent first argues the trial court erred in concluding she neglected her children. Respondent alleges that neither the findings of fact nor clear, cogent and convincing evidence support this ground. We disagree.
The standard for appellate review in a termination of parental rights matter is whether the trial judge's findings of fact are supported by clear, cogent, and convincing evidence, and whether these findings support its conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). A court's finding of one statutory ground for termination, if supported by competent evidence, will support an order terminating parental rights. In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995). The court's decision to terminate parental rights, if based upon a finding of one or more of the statutory grounds supported by the evidence in the record, is reviewed on an abuse of discretion standard. In re Brim, 139 N.C. App. 733, 744, 535 S.E.2d 367, 373 (2000).
A "neglected juvenile" is defined as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2003). "`Neglect may be manifested in ways less tangible than failure to provide physical necessities. Therefore, on the question of neglect, the trial judge may consider, in addition, a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship.'" In re Pierce, 67 N.C. App. 257, 263, 312 S.E.2d 900, 904 (1984) (quoting In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982)). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted).
In the present case, in addition to the trial court's finding of fact seventeen which identifies the steps she must take before the children would be returned to her care, respondent does not challenge the following findings of the trial court as to neglect[2]: 20. That the home in Wake Forest, N.C. has not been free from safety concerns in that there was an incident of domestic violence on March 18, 2004, at the residence by a man identified by respondent to Wake Forest Police Officer May as the father. Respondent informed Officer May that the father beat her up in the face and she was punched with a closed fist in the head, lips, arms and hands. She testified on June 23, 2004, that the person she reported to the officer as assaulting her was Alterick Hill and not the father.
21. That respondent has maintained employment most of the time since Adjudication though it has not always been stable: She worked two jobs, Burger King and Hardees, from June to September 2002. In March 2003 she changed to Wendy's. In August 2003, she worked at McDonald's and Wendy's. In October 2003, she broke her hand. In January 2004, she was back at work. She did not show up for work . . . and based on her history, she was terminated from McDonald's and Wendy's by March 11, 2004. . . . As of August 2004, she was working at Wal-Mart approximately 33 hours per week and Bojangles ten hours per week.
22. That while respondent has had a record of earning income for most of the period the children have been in the custody of Wake County Human Services, she has been unable to keep her rent, utility, water, sewer, sanitation and electricity bills paid in a timely fashion. . . .
23. That respondent received much assistance with her bills . . .; however, despite assistance from others, between March 2003 and April 2004, no household account was consistently paid to avoid past due amounts.
24. That within the month prior to the hearing in June 2004, electricity had been disconnected at respondent's residence for non-payment of her bill.
25. That according to respondent's own testimony at the conclusion of this hearing on August 25, 2004, while she was working at both Wal-Mart and Bojangles, she still did not have her August rent fully paid or her Town of Wake Forest account current.
. . .
27. That in a budgeting session on September 11, 2003 . . . respondent's monthly income of $1500 in August 2003 exceeded her bills of $1000 by $500. . . . Respondent was referred to budget counseling to assist her with her finances.
. . .
31. That respondent has chosen to expend money on cable television at $39 per month, has call waiting on her phone service at $5.00 per month and chose to buy two outfits from the Finish Line with shoes included for her children which she brought to the March 16, 2004, court date at a time when her household accounts were past due.
32. That respondent has had a spotty record in providing pay stubs to verify income. She provided no pay stubs to Human Services for January 2003, April 2003, late June and July 2003, or for September 2003.
. . .
35. That while respondent has testified that she last saw the father in 2002 or the end of 2001 in Wisconsin, and that she has never seen him in North Carolina since that time, her former landlord has been introduced to the father by respondent and has seen him at least three times per month at respondent's residence. The father has been at the residence whenever the landlord has gone to the residence and the landlord has seen them together at church . . . as recently as early June 2004. . . .
37. That a letter written by and read to the court by T.J.W. expressing fear about past and future violent acts committed by the father on respondent was accepted into evidence.
. . .
44. That respondent had involvement with child protective services in Wisconsin. Criminal records from Milwaukee County, Wisconsin show that the father pled guilty to child abuse on another one of his children and was ordered not to be around him. A copy of his criminal complaint in Milwaukee County Circuit Court, State of Wisconsin v. Father was accepted into evidence.
The trial court also made specific findings regarding respondent's care for her children. For example, at the time of the termination hearing, the trial court found respondent was providing her children with a place to live in Wake Forest which had a refrigerator and telephone and respondent was staying current on her child support. Such findings demonstrated that respondent had completed some of the court-ordered assignments between the adjudication and disposition hearing (April 2002) and the termination hearing (August 2004).
However, respondent did not fully comply with the trial court's orders. The trial court found that she failed to be truthful about her continued contact with the father. The trial court found respondent had failed to produce consistent records of her pay stubs to Human Services and, despite the fact that her expenditures exceeded her monthly income by fifty percent, she failed to participate in budget counseling to assist her with financial management. This lack of planning created a tumultuous life in which the trial court found "no children should have to bear this environment, to wonder if the lights will be on, if the rent will be paid and if the environment will be safe from domestic violence." Based on clear, cogent and convincing evidence, the trial court did not err in determining respondent neglected the children and there was a probability of the repetition of neglect if the children were returned to the care of their mother. This assignment of error is overruled.
II
Respondent argues the trial court erred in concluding she left her children in foster care for more than twelve months.
N.C. Gen. Stat. § 7B-1111(a)(2) provides:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C.G.S. §7B-1111(a)(2) (2003).
The children were placed in foster care in April 2002, twenty-six months before the hearing to terminate respondent's parental rights began. At the time of the filing of the termination of parental rights petition in August 2003, the activities that led to removal of the children remained unchanged from that of April 2002. Respondent visited her children while they were in foster care and paid $11.20 in child support per month for each child. However, she changed jobs frequently, inconsistently paid her rent and utilities and spent time, against the trial court's orders, with the father, who was involved in incidents of domestic violence and child abuse. In a letter received by the trial court, T.J.W. described one previous incident as "Daddy has been beating on Mommy" and "will punch Mommy in her face and slap her down on the ground." T.J.W. also wrote about asking respondent to leave her "Daddy" and to call the police when respondent was hit. The trial court then found respondent lied to the trial court about her repeated contact with the father. The trial court properly found and concluded by clear, cogent and convincing evidence that respondent had not made reasonable progress to correct the conditions that led to foster care placement. This assignment of error is overruled.
III
Respondent next argues the trial court erred in finding it was in the children's best interests to terminate her parental rights. Respondent alleges the trial court abused its discretion in concluding the children's well-being would not be promoted unless her parental rights were terminated. We disagree.
If the petitioner proves that one or more grounds for termination exist, the trial court moves to the disposition phase at which time the trial court determines whether termination is in the best interests of the child. N.C.G.S. § 7B-1110 (2003); Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. The standard of review on appeal is abuse of discretion. Yocum, 158 N.C. App. at 206, 580 S.E.2d at 403; Brim, 139 N.C. App. at 744, 535 S.E.2d at 373-74. N.C.G.S. § 7B-1110 states:
(a) Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated. . . .
(b) Should the court conclude that, irrespective of the existence of one or more circumstance authorizing termination of parental rights, the best interests of the juvenile require that rights should not be terminated, the court shall dismiss the petition or deny the motion, but only after setting forth the facts and conclusions upon which the dismissal or denial is based.
N.C.G.S. § 7B-1110 (2003). The trial court found respondent has had continued contact with the father, exposed the children to domestic violence and has not properly managed her finances so that the basic needs of the children are met. The trial court found clear indications respondent is either unwilling or incapable of assuming the responsibilities associated with the proper care of her children. Therefore, the trial court concluded the best interests of the juveniles would be promoted by terminating the respondent's parental rights. Here, the trial court set out detailed findings based on substantial and competent evidence which support the conclusion that it is in the best interest of the three children to terminate respondent's parental rights. This assignment of error is overruled.
IV
Respondent argues the trial court abused its discretion in terminating respondent's parental rights. We disagree.
Once the trial court determines that grounds exist for authorizing the termination of parental rights, the court must, in its discretion, determine whether such termination is in the best interests of the children. N.C.G.S. § 7B-1110 (2003). Appellate review is limited to whether the trial court abused its discretion. In re Anderson, 151 N.C. App. 94, 564 S.E.2d 599 (2002).
Throughout these proceedings, the trial court heard from the children, the children's therapists, Wake County Human Services, the children's Guardian ad Litem, the social worker and respondent. The trial court therefore determined, in its discretion, that it was in the best interests of the children to have a permanent plan of care with the prospect of an adoptive home, rather than live with respondent. This assignment of error is overruled.
Affirmed.
Judges HUDSON and CALABRIA concur.
Report per Rule 30(e).

Initials are used throughout to protect the identity of the juveniles.

Unchallenged findings of fact are binding on the parties. In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001).