IN THE MATTER OF: A.A.
No. COA09-818
Court of Appeals of North Carolina
Filed November 3, 2009
Scott W. Warren, Roger A. Askew, and Mary Elizabeth Smerko for Wake County Human Services, petitioner-appellee.
Pamela Newell Williams for guardian ad litem-appellee. Windy H. Rose for respondent-appellant.
WYNN, Judge.
Respondent-mother appeals from the trial court's order terminating her parental rights to the minor child, A.A. For the reasons discussed herein, we affirm.
On 16 November 2007, as a result of several domestic disputes between A.A.'s biological parents, A.A.'s paternal grandmother obtained a trespassing order against Respondent-mother. On 19 November 2007, pursuant to a safety plan, A.A. was placed with his paternal grandmother.
On 4 December 2007, Wake County Human Services ("WCHS") filed a juvenile petition alleging that A.A. was a neglected and dependent juvenile. The petition alleged that the child had not had a stable home since his birth and that both parents were homeless. The petition further alleged that the child was at risk of harm due to the instability, domestic violence, and mental health issues of the parents. For a brief period, the child was placed with the paternal grandmother, but when the grandmother was no longer able to care for the child, A.A. was placed in foster care.
In January 2008, the trial court adjudicated A.A. to be a neglected and dependent juvenile; determined that custody should remain with WCHS; and decided that A.A. should remain in foster care. In October 2008, the trial court conducted a permanency planning hearing; relieved WCHS of its duty to make reasonable efforts to reunite A.A. and Respondent-mother; and changed the permanent plan to adoption.
Following the filing of a motion to terminate the parents' parental rights in December 2008, the trial court conducted a hearing on the motion to terminate parental rights on 9 April 2009. Upon finding grounds existed to terminate both parents' parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1) and (2) (2007), the trial court entered an order on 23 April 2009 terminating their parental rights. Respondent-mother appeals.
A termination of parental rights proceeding is conducted in two phases: (1) adjudication and (2) disposition. See In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In the adjudication phase, the petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination under N.C. Gen. Stat. § 7B-1111(a) exists. Id. In reviewing an order terminating parental rights, we examine the findings of fact to determine whether they are supported by clear, cogent and convincing evidence and whether the conclusions of law are supported by the findings of fact. In re Huff, 140 N.C. App. 288, 292, 536 S.E.2d 838, 840 (2000), appeal dismissed, disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) (Citation omitted). Findings of fact supported by competent evidence are binding on appeal, even where there is evidence which supports contrary findings. In re Mills, 152 N.C. App. 1, 6, 567 S.E.2d 166, 169 (2002), cert. denied, 356 N.C. 672, 577 S.E.2d 627 (2003).
Respondent first challenges the conclusion that grounds exist to terminate her parental rights pursuant to N.C. Gen. Stat. § 7B1-111(a)(1), which provides for termination of parental rights where "[t]he parent has abused or neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1)(2007). A neglected juvenile is defined as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15)(2007). Neglect must exist at the time of the termination hearing. However, where "the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." In re C.W., 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007).
Here, the trial court made the following relevant findings of fact:
39. That on October 17, 2008, the Court found that reunification efforts with the mother were futile and inconsistent with the child's health, safety, and need for a permanent home within a reasonable time. The genesis of this matter involved domestic violence and the mother's mental health issues, and the mother had not demonstrated significant progress or urgency in engaging in individual counseling.. . .
41. That in February, 2009, after the December, 2008 filing of the TPR motion, the mother filed a motion for the Court to amend the permanent plan back to reunification based on her attending therapy consistently after the October, 2008 hearing. The mother had began [sic] to attend mental health counseling, which she secured on her own, since October 2008. Her therapist did not appear as a witness at the February, 2009 hearing on the mother's motion, nor has the therapist testified at this hearing on the TPR motion. The mother has presented insufficient evidence to demonstrate that she has made significant progress in addressing the problems which caused the child's removal and the issues presented in the mother's psychological evaluation completed by Dr. Mary Willard in March, 2008. The Court found that the mother will continue to need individual counseling and that she had not demonstrated that she would be able to provide a safe home for the child within a reasonable time. The Court denied the mother's motion and continued to sanction the permanent plan of adoption.
. . .
43. That the mother presented evidence that she has maintained a stable home by remaining at the home of her father. The Court at the last hearing made a finding that the grandfather had at one time stated that the mother's placement there would not be permanent. The mother testified that she can stay there as long as necessary.
44. That at the February, 2009, hearing, the mother indicated that she recently left her job that she had for a year and had taken on new part time employment and entered school to learn culinary arts, which she'll continue for about one year. She stated that she would rely on the support of her father to care for the child. It was not clear from the testimony how much time the grandfather would have for this support, since he is employed and spends time traveling with a band. Since the [sic] February 24, 2009, the mother has decided not to attend culinary school and she has retained her previous job. She makes $10.00-$15.00 per hour and works varying part-time hours per week. She has not demonstrated that she makes sufficient income to support herself and the child, though she stated that [she] could work more if and when the child was returned to her care.
45. That the mother has only called the foster parent two times to check up on the welfare of her child, although she was urged to keep up with the child's welfare and the foster parent had welcomed her to call frequently.
. . .
47. That although the mother made some progress in correcting the problems that caused the removal of the child from her care, she has not provided sufficient evidence to show that she can provide a safe home for the child.
48. That in light of the circumstances, the mother has not made reasonable progress in correcting the problems which caused the removal of the child from her care over 12 months prior to the filing of the motion to terminate parental rights.
49. That the mother has neglected her minor child and it is probable that the neglect would continue of [sic] the child were placed in her care.
Respondent-mother challenges finding of fact number 47 as not being supported by competent evidence. She contends that this finding shows that there is no probability of repetition of neglect and erroneously shifts the burden of proof from the petitioner to show the probability of neglect. She also contends that finding of fact number 48 is not supported by competent evidence, as she had completed the goals ordered by the trial court prior to the termination hearing. We disagree.
While the record shows that Respondent-mother made some progress, the record also shows evidence of Respondent-mother's reluctance to begin counseling; failure to continue counseling; and unwillingness to take full advantage of the counseling services available. The services were intended to help her in achieving reunification with A.A, yet Respondent-mother did not display an urgency in pursuing them. Dr. Robert Aiello, the psychologist who supervised Respondent-mother's psychological evaluation, testified that he would have wanted Respondent-mother to "jump right in" and take advantage of all the services and show progress. He expressed concern that she waited six to seven months to initiate mental health therapy. The respondent's lack of urgency had an adverse effect on her relationship with A.A. Mr. Hayner, the social worker that supervised the case, testified that Respondent-mother was not establishing a bond with A.A. and exhibited high anxiety in dealing with A.A.'s crying during visits. In fact, Respondent-mother left one of the visitations early because she could not handle the stress of A.A.'s crying. Moreover, although Respondent-mother provided some evidence that she was in therapy, the therapist had never contacted WCHS, and WCHS had not been able to verify any progress Respondent-mother had made in therapy. Dr. Aiello also testified that he had not had any contact with Respondent-mother's therapist.
We hold that the challenged findings are supported by competent evidence. Respondent-mother does not challenge the sufficiency of the evidence to support the remaining factual findings. Findings of fact that are not challenged on appeal are deemed supported by the evidence and are binding upon this Court. In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003). We also hold that the burden of proof was not shifted to Respondent-mother; instead, the trial court merely acknowledged that Respondent-mother "did not produce evidence that contradicted the allegations set forth in the petition." In re Clark, 72 N.C. App. 118, 125, 323 S.E.2d 754, 758 (1984).
Furthermore, we hold that the evidence supports the trial court's finding that Respondent-mother neglected A.A. and that the neglect would continue if A.A. was placed in Respondent-mother's care, as the evidence tends to show that Respondent-mother has shown a lack of urgency with her therapy and has not demonstrated an understanding of A.A.'s age and his need for permanence.
Based on the foregoing, we conclude that the trial court's findings of facts are sufficient to support its conclusion that grounds exist to terminate Respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Respondent-mother's unwillingness to seek counseling increases the likelihood that she will not be able to provide A.A. with adequate care. Having concluded that one ground for termination of parental rights exists, we need not address the additional ground found by the trial court. In re Brim, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000).
Once the trial court determines that a ground for termination exists, the court moves on to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a)(2007). The determination of whether termination is in the best interests of the minor child is governed by N.C. Gen. Stat. § 7B-1110, which states that the trial court shall consider the following factors:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any other relevant consideration.
N.C. Gen. Stat. § 7B-1110(a)(2007). The standard for appellate review of the trial court's decision to terminate parental rights is abuse of discretion. Brim, 139 N.C. App. at 745, 535 S.E.2d at 374. "A trial court may be reversed for abuse of discretion only upon a showing that its actions are `manifestly unsupported by reason.'" Davis v. Davis, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).
Here, the trial court found:
53. That A.[A.] is now 1 ½ years old and has lived [in] his foster home since December, 2007 where he has formed a very strong bond with his foster mother and her family. The child looks to the foster mother for parental guidance and support.
. . .
55. That A.[A.] recognizes his mother and after over a year of visitation seems comfortable around her, but he has not formed a strong attachment to her whereby he looks to her for parental guidance and support.
56. That the placement plan in this matter is adoption and termination of the rights of the parent will aid in the accomplishment of that plan.
57. That adoption of the child is likely by the current foster mother, and if for some reason this placement disrupted, the adoption of the child would still be very likely.
In light of these findings, which are supported by the evidence, we hold that the trial court properly considered the statutory factors. Accordingly, we conclude that the trial court did not abuse its discretion in determining that it was in A.A.'s best interests to terminate Respondent-mother's parental rights.
Affirmed.
Judges STEELMAN and ERVIN concur.
Report per Rule 30(e).