IN THE MATTER OF: M.W. and J.W., Minor Children
No. COA09-1009.
Court of Appeals of North Carolina.
Filed December 22, 2009.
This case not for publication
Office of the Wake County Attorney, by Assistant County Attorneys Lucy Chavis, Roger A. Askew, and Julia B. Southwick, for Wake County Department of Social Services, petitioner-appellee.
N.C. Administrative Office of the Courts, by Appellate Counsel Pamela Newell Williams, for Guardian ad Litem.
Duncan B. McCormick, for respondent-appellant mother.
JACKSON, Judge.
Respondent appeals from the order terminating her parental rights to the minor children, M.W. and J.W. For the reasons set forth below, we affirm.
On 16 October 2007, Wake County Human Services ("WCHS") filed a juvenile petition alleging that M.W. and J.W. were neglected juveniles in that they were not receiving proper care and supervision and lived in an environment injurious to their welfare. On 28 November 2007, the trial court adjudicated the children neglected juveniles and placed them in the legal custody of WCHS.
On 21 February 2008, the trial court continued custody of the children with WCHS and adopted the permanent plan of reunification with respondent. Respondent also was allowed unsupervised visitation. On 10 April 2008, a hearing was held on respondent's motion for physical custody of the children. By order entered 8 May 2008, respondent was given physical custody of the children, but legal custody continued with WCHS.
On 12 January 2009, WCHS filed a petition for termination of respondent's parental rights. The case was heard on 21 and 22 April 2009. On 25 May 2009, the trial court entered an order terminating the parental rights of respondent and the children's biological father[1]. The trial court concluded that grounds existed to terminate the parental rights of both parents based upon dependency, neglect, and willfully leaving the children in foster care for more than twelve moths without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting the conditions that led to the children's removal, and that respondent also had willfully failed to pay a reasonable portion of the cost of care for the children for a continuous period of six months next preceding the filing of the petition. Respondent appeals.
On appeal, respondent argues that the trial court erred by concluding that grounds existed to terminate her parental rights. We disagree.
Termination of parental rights involves a two-step process. See In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. rev. denied, 353 N.C. 374, 547 S.E.2d 9 (2001). "We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." In re Shepard, 162 N.C. App. 215, 222, 591 S.E.2d 1, 6, disc. rev. denied, In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004).
A trial court may terminate parental rights on the ground that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). "[A] respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions[.]" In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004) (citations and internal quotation marks omitted).
Here, the trial court made the following relevant findings of fact:
12. That the circumstances which caused the children to be placed in foster care on October 22, 2007, were:
The parents have a history of domestic violence which include[s] incidents which have involved the children. Both parents have substance abuse issues. The children came into care after an incident of domestic violence which occurred on September 29, 2007, in which one of the children was injured. Shortly after this incident, the mother was observed by a family member to be intoxicated. The children were observed to be unkempt and inappropriately dressed. They smelled of beer. The family member found broken dishes and knives out on the counters. The mother continued treatment through Summit House while the children went to stay with their aunt and uncle. A drug screen administered by Summit House was positive for cocaine. The mother had been involved in a program as a result of a criminal judgment in 2005. She was at Summit House for 22 months. She had a relapse during residency in the program and relapsed again shortly after leaving the program.
. . . .
14. That the steps identified for mother to take before the Court would consider the return of the children to her care were:
a. Substance abuse treatment; maintain sobriety and cooperate with random drug screens.
b. Successfully complete the terms of her probation.
c. Comply with psychological evaluation and follow recommendations.
d. Maintain stable and appropriate housing.
e. Maintain stable, legal employment.
f. Comply with the terms of the visitation plan.
. . . .
19. That the mother began to have unsupervised visitation with the children in February, 2008. In April 2008, the decision was made to place the children with the mother as it was believed that she could provide proper care and supervision for the children and the children would have otherwise had to be moved from their foster care placement due to the illness of a foster parent.
20. That the mother was given the benefit of the doubt regarding placement of the children even though a few of her drug screens showed low creatinine levels which is an indication that the urine sample had been diluted or otherwise tampered with.
21. That after approximately five (5) weeks, WCHS was made aware of the fact that the mother's behavior was erratic and that her family members suspected that she had relapsed. The maternal grandmother contacted the social worker to report that the mother had failed to pick up the youngest child from her home as planned. When the maternal grandmother went to the mother's home, the maternal grandmother noticed the outline of what appeared to be a crack pipe in the mother's pants pocket. Another family member reported that the mother had failed to attend a planned family gathering and had made inconsistent and contradictory statements when questioned about her failure to attend the gathering.
22. That the social worker requested several drug screens in May 2008 after the children were removed from the mother's care. The mother did not comply. The decision was made to have the children remain with their respite caregivers until such time as the mother submitted to a drug screen.
23. That the mother ignored three additional requests for drug screens along with an additional request for a hair sample drug screen. On June 10, 2008, the mother admitted to the social worker that she had relapsed with alcohol. On June 16, 2008, the mother admitted to her substance abuse counselor that she had used cocaine.
24. That between May 24, 2008, and June 10, 2008, the mother was offered supervised visitation and declined to participate.
25. That the mother was prescribed a medication for weight loss and subsequently admitted to taking more than the prescribed dose over several weeks. The mother took the medication even though her substance abuse counselor had questioned the wisdom of using such a drug considering the mother's history of addiction. On June 24, 2008, the mother admitted to the social worker that she had used alcohol and cocaine to assist her in weaning herself from the diet pills.
26. That on or about June 29, 2008, the mother was involved in two hit and run incidents and was charged with driving while impaired.
27. That on June 30, 2008, the mother admitted to her substance abuse counselor that she was abusing prescription medication and alcohol.
28. That in mid-October, 2008, the mother was referred to The Healing Place for substance abuse treatment after being denied entry into the Alcohol Treatment Center. Said denial was based on the fact that she had failed to complete the program in August, 2008. She refused to participate in The Healing Place program.
29. That the mother was arrested for shoplifting on October 19, 2008.
30. That the mother was arrested on October 30, 2008, for violation of her probation. At the time she was arrested, the mother was visibly intoxicated, smelled of alcohol, was glassy eyed, and her speech was slurred. While in the custody of her probation officer, the mother jumped from the vehicle while it was in motion in an attempt to escape. The mother remained uncooperative after she was re-apprehended. The mother was incarcerated as a result of the probation violation and is presently at North Carolina Correctional Institution for Women in Raleigh, North Carolina. The mother's projected release date is June, 2009. The mother testified that she does not have a specific plan as to what she is going to do upon her release but is working with a case manager at the prison.
. . . .
32. That at the time of her arrest, the mother was homeless and unemployed.
. . . .
34. That the mother has a long history of substance abuse including the failure to maintain her sobriety when faced with stressors of any kind. She began abusing substances as a teenager and has been in treatment numerous times including inpatient treatment at Dorothea Dix Hospital, inpatient treatment at Wake County Alcohol Treatment Center, The North Carolina Drug and Alcohol Treatment Center in Selma, North Carolina, and The Alcohol and Drug Abuse Treatment Center in Butner, North Carolina. The mother has a history of failing to refrain from using substances in spite of her participation in several substance abuse prevention programs, and an inability to refrain from using substances in any situation that was not structured along with an inability to refrain from abusing substances even with family, community and professional support in place.
. . . .
41. That the child, [M.W.], has been in an out-of-home placement for 31 of her 52 months of life. The child, [J.W.], has been in an out-of-home placement for 17 of her 39 months of life. . . .
Respondent does not challenge any of the findings cited above. Therefore, they are presumed to be correct and supported by the evidence. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982), appeal dismissed, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983) (citations omitted). The unchallenged findings of fact support the conclusion that respondent willfully left the children in foster care for more than twelve months without making reasonable progress in correcting the conditions that led to their removal. Accordingly, we hold that the trial court did not err in concluding that grounds existed to terminate respondent's parental rights pursuant to North Carolina General Statutes, section 7B-1111(a)(2).
Having concluded that one ground for termination of parental rights exists, we need not address the additional arguments related to the other grounds found by the trial court. See, e.g., In re Brim, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000).
For the foregoing reasons, we affirm the order of the trial court.
Affirmed.
Judges HUNTER, Robert C. and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] The father is not a party to this appeal.