635 S.E.2d 916 (2006)
In the Matter of J.M.W. E.S.J.W.
No. COA05-1672.
Court of Appeals of North Carolina.
October 17, 2006.
Onslow County Department of Social Services, by Cindy Goddard Strope, Jacksonville, for petitioner-appellee.
Womble Carlyle Sandridge & Rice, PLLC, by Stuart A. Brock, Charlotte, for petitioner-appellee Guardian Ad Litem.
The Turrentine Group, PLLC, by Karlene Scott-Turrentine, Raleigh, for respondent-appellant.
WYNN, Judge.
A single ground under North Carolina General Statutes § 7B-1111 is sufficient to support an order terminating parental rights.[1] Here, because Respondent did not challenge two of the grounds for terminating her parental rights, we uphold the termination order. Further, where mental illness was referred to by the trial court in its findings of fact, but not substantially relied upon for its conclusions of law or its decision to terminate parental rights, we hold the trial court was not required to appoint a guardian ad litem for the respondent-mother.[2]
On 21 December 2001, the Onslow County Department of Social Services (DSS) filed a juvenile petition alleging the two minor children at issue in this case were dependent because Respondent-mother was arrested and no other caretakers were available. The children were adjudicated dependent on 14 March 2002, and were in the custody of DSS and foster care from December 2001 until 5 April 2002, when they were returned to their mother following her release from jail. At that time, the court ordered Respondent-mother to complete a number of services, including substance abuse and psychological evaluations, parenting classes, domestic violence *918 counseling, and securing and maintaining full-time employment.
The children were then "observed to be comfortable in the home with their mother" and "interaction between the children and [the mother] [wa]s seen to be positive." Nevertheless, on 14 August 2002, the children were removed from Respondent-mother's home and placed in the temporary custody of her neighbors, after incidents of domestic violence occurred. However, on 24 October 2002, the neighbors asked DSS to pick up the children, complaining about Respondent-mother's behavior. DSS filed another order for nonsecure custody on 28 October 2002, charging that Respondent-mother was "not a suitable placement for the juveniles due to her inability to protect the children and her failure to take her medication." The children were again adjudicated dependent on 10 February 2003, and full custody was ordered to remain with DSS.
In March 2003, "the children witnessed their mother being arrested due to a violation regarding her house arrest," and she then began serving a sentence of approximately nine months, with additional federal charges pending. The court entered an order on 23 June 2003, changing the case plan from reunification to custody with a relative and ordering a homestudy of a maternal aunt to determine her suitability as a placement. DSS custody was continued in a 2 September 2003 hearing, at which an additional homestudy of a paternal cousin was ordered and all contact between Respondent-mother and the children was directed to cease until her release from prison. In October 2003, Respondent-mother pled guilty to federal charges and was sentenced to twenty-four months in prison, followed by three years of supervision.
After a brief, three-month placement with a maternal aunt in Ohio, the two minor children were found to have been mistreated and were returned to the physical custody of DSS and the foster home they had left in December 2003. DSS filed a petition to terminate Respondent-mother's parental rights on 25 August 2004, alleging that she had (1) neglected the children; (2) wilfully left the children in foster care for more than twelve months without reasonable progress; (3) failed to provide child support; and, (4) willfully abandoned the children for at least the six months prior to the filing of the petition. On 22 November 2004, the court ordered that the case plan be changed from relative placement to the termination of parental rights and adoption in order to best achieve a safe, permanent home for the children.
On 18 March 2005, the court entered an order terminating the parental rights of Respondent-mother on the grounds that she had (1) neglected the children by committing repeated criminal acts and failing to provide the children with proper care, supervision, and discipline, and that there was a reasonable likelihood she would neglect the children further in the future; (2) willfully left the children in foster care for more than twelve months without showing reasonable progress toward correcting the conditions that had led to their removal from the home; (3) willfully abandoned the children for at least six months prior to the filing of the termination petition, due to her knowledge that when she commits a criminal act resulting in incarceration, the children have nowhere to go except foster care; and (4) willfully failed to pay child support for at least six months prior to the filing of the termination petition, despite the ability to pay an amount more than zero.
Respondent-mother appeals the termination of her parental rights, arguing that (I) the trial court abused its discretion and committed reversible error in its conclusions that she had willfully left the children in foster care for twelve months without reasonable progress, willfully abandoned the children for six months, and willfully failed to pay child support; (II) the trial court failed to appoint her a guardian ad litem, in light of her diagnosis with depressive disorder; and, (III) the trial court failed to require DSS to file for and follow through on a domestic violence restraining order to protect the children and Respondent-mother.

I.
A trial court may terminate parental rights on the basis of several grounds, and "[a] finding of any one of the . . . separately *919 enumerated grounds is sufficient to support a termination." In re Pierce, 67 N.C.App. 257, 261, 312 S.E.2d 900, 903 (1984); see also In re J.A.A., ___ N.C.App. ___, ___, 623 S.E.2d 45, 50 (2005) ("The trial court can terminate a respondent's parental rights upon the finding of one of the grounds enumerated in N.C. Gen.Stat. § 7B-1111(a)."). In a termination proceeding, this Court "should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law." In re Allred, 122 N.C.App. 561, 565, 471 S.E.2d 84, 86 (1996). Moreover, findings of fact are conclusive on appeal if they are supported by "ample, competent evidence," even if there is evidence to the contrary. In re Williamson, 91 N.C.App. 668, 674, 373 S.E.2d 317, 320 (1988). If unchallenged on appeal, findings of fact "are deemed supported by competent evidence" and are binding upon this Court. In re Padgett, 156 N.C.App. 644, 648, 577 S.E.2d 337, 340 (2003). "So long as the findings of fact support a conclusion based on [the statute], the order terminating parental rights must be affirmed." In re Oghenekevebe, 123 N.C.App. 434, 436, 473 S.E.2d 393, 395-96 (1996). Moreover, "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R.App. P. 28(b)(6).
Here, although Respondent-mother assigned as error the court's finding as fact and concluding as law that she had willfully left the children in foster care for twelve months without reasonable progress, willfully abandoned the children for six months, and willfully failed to pay child support, her brief presented arguments only as to the first two conclusions, thereby abandoning the third. In addition, Respondent-mother did not offer any argument contesting the trial court's conclusion that she had neglected the children by committing repeated criminal acts and that there was a reasonable likelihood that she would neglect them in the future. Respondent-mother also did not allege that the trial court erred in deciding that termination would be in the best interests of the children.
Since the unchallenged grounds are sufficient to support the trial court's order of termination, we affirm without examining Respondent-mother's arguments as to the other grounds.

II.
Respondent-mother further assigns as error the trial court's failure to appoint her a guardian ad litem, arguing that her mental illness necessitated such action under North Carolina General Statutes §§ 7B-602 and 7B-1101 (2003).[3]
The relevant portions of those statutes compel the appointment of a guardian ad litem for a parent in a termination case where
it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile . . .
N.C. Gen.Stat. 7B-602(b)(1) (2003), as well as where
it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition.
N.C. Gen.Stat. 7B-1101(1) (2003). The necessary findings for termination under section 7B-1111(a)(6) are that "the parent is incapable of providing for the proper care and supervision of the juvenile, . . . and that there is a reasonable probability that such incapability will continue for the foreseeable future . . . as a result of . . . mental illness, . . ." N.C. Gen.Stat. § 7B-1111(a)(6) (2003).
*920 This Court has previously held that section 7B-602(b)(1) did not require the trial court to appoint a guardian ad litem unless
(1) the petition specifically alleges dependency; and (2) the majority of the dependency allegations tend to show that a parent or guardian is incapable as a result of some debilitating condition listed in the statute of providing for the proper care and supervision of his or her child.
In re H.W., 163 N.C.App. 438, 447, 594 S.E.2d 211, 216 (emphasis added), disc. review denied, 358 N.C. 543, 599 S.E.2d 46 (2004). However, "the trial court is not required to appoint a guardian ad litem in every case where substance abuse or some other cognitive limitation is alleged." In re J.A.A., ___ N.C.App. at ___, 623 S.E.2d at 48 (internal quotations and citation omitted). The causal connection between the mental illness and the incapacity to provide proper care must be clear. See In re Estes, 157 N.C.App. 513, 518, 579 S.E.2d 496, 499, disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003) (requiring the appointment of a guardian ad litem where the allegations tend to show incapacity "because of mental illness"); In re T.W., 173 N.C.App. 153, 159-60, 617 S.E.2d 702, 705-06 (2005) (noting that the trial court's duty to appoint a guardian ad litem was triggered when the respondent's "mental instability and her incapacity to raise her minor children were central factors in the court's decision"); In re J.D., 164 N.C.App. 176, 182, 605 S.E.2d 643, 646 (in a neglect case, the appointment of a guardian ad litem was still required because there was "some evidence that tended to show that respondent's mental health issues and the child's neglect were so intertwined at times as to make separation of the two virtually, if not, impossible."), disc. review denied, 358 N.C. 732, 601 S.E.2d 531 (2004).
Indeed, the question of whether the appointment of a guardian ad litem is required is controlled by "the substance of the trial court's reasoning, not specific citations to or allegations of dependency." In re L.W., ___ N.C.App. ___, ___, 623 S.E.2d 626, 629, disc. review denied, 360 N.C. 534, 633 S.E.2d 818 (2006).
In the instant case, the DSS petition to terminate parental rights contained no allegations that the children were dependent due to mental health, pursuant to section 7B-1111(a)(6), but instead that they were neglected or abandoned. DSS did not argue that Respondent-mother was incapable of providing proper care for her children, but rather that she had willfully failed to do so.
Likewise, the trial court's order of termination concluded that Respondent-mother had "neglected the children [by committing] repeated criminal acts, thereby creating situations in which the juveniles were deprived of their mother's care, supervision, and affection." Moreover, the court found that she had "willfully failed to pay child support . . . despite having the ability to pay some amount greater than zero." Although the trial court's order included reference to Respondent-mother's suicide attempt in December 2004 and her depressive disorder, finding that it was "part of the reason for her criminal history and part of the reason for her being the victim of domestic violence historically," the court also concluded that Respondent-mother's abandonment was based on her "knowledge that when she commits criminal acts resulting in her incarceration . . . her children have nowhere to go except foster care." The trial court further noted that, during the most stable time period of Respondent-mother's life, she was still unable to provide care for the children and that she is still not "in a position to be independent." Out of forty findings of fact, only two referred to Respondent-mother's mental illness.
We conclude that, taken as a whole, the trial court's order indicates that the substance of her reasoning was based on Respondent-mother's knowledge of the effect her arrests and incarcerations had on her children, and that her mental illness was not a central factor in the trial court's findings, conclusions, or decision, nor was her neglect or failure to pay child support due to her condition. The appointment of a guardian ad litem was therefore not compelled under section 7B-602(b)(1), and we find no error.

*921 III.
Lastly, Respondent-mother assigns as error the trial court's failure to require DSS to make reasonable efforts to protect the children in their home placement with Respondent-mother by filing for and following through with the necessary domestic violence restraining order. However, Respondent-mother cites no authority in her brief by which this issue would properly be before this Court, given that Respondent-mother did not appeal the 23 June 2003 order changing the case plan from reunification to relative placement. Because the order was not appealed, it is valid and binding in every respect. See Hayden v. Hayden, 178 N.C. 259, 263, 100 S.E. 515, 517 (1919). We therefore dismiss this assignment of error.
Affirmed in part, dismissed in part.
Judges McGEE and McCULLOUGH concur.
NOTES
[1] In re Pierce, 67 N.C.App. 257, 261, 312 S.E.2d 900, 903 (1984).
[2] See In re J.A.A., ___ N.C.App. ___, ___, 623 S.E.2d 45, 50 (2005).
[3] We note that these statutes were amended in 2005; because DSS filed the termination petition in this case prior to the amended statutes' effective date of October 1, 2005, the earlier versions control here.