IN THE MATTER OF: K.N.C.
No. COA09-489
Court of Appeals of North Carolina
Filed September 1, 2009
This case not for publication
J. David Abernethy, for petitioner-appellee Catawba County Department of Social Services,.
J. Locke Milholland IV for Guardian ad Litem.
Susan J. Hall for respondent-appellant mother.
Richard Croutharmel for respondent-appellant father.
STEPHENS, Judge.
Respondents A.J. ("respondent-mother") and R.C. ("respondent-father") appeal from the trial court's order terminating their parental rights to the minor child, K.N.C. For the reasons discussed herein, we affirm.

I. Procedural History and Factual Background
On 3 March 2007, Catawba County Department of Social Services ("DSS") obtained nonsecure custody of K.N.C. On 5 March 2007, DSS filed a juvenile petition alleging that K.N.C. was a neglected juvenile in that she did not receive proper care, supervision, or discipline and lived in an environment injurious to her welfare. Specifically, the petition alleged:
Upon information and belief, the mother A.J., and putative father to the minor child, R.C. engaged in a domestic violence incident, on or about January 25, 2007, resulting in the mother having to go to the emergency room to have stitches in her head. The minor child was present during the altercation and reportedly the mother and child . . . were covered in blood. A Child Protective Services report was received on January 26, 2007, and the parent[s'] whereabouts have been unknown until March 3, 2007.
On 20 and 21 August 2007, a hearing was held on the juvenile petition. The trial court found that:
2. The father, Mr. R.C.[,] assaulted the mother, Ms. A.J., on January 25, 2007, resulting in the mother's having to go to the emergency room to have staples placed on a cut in her head. The minor child was present during the assault and was at risk of harm. The mother's version of the incident, that she accidentally slipped and fell, is not credible.
3. After the assault took place, while the mother was bleeding, the mother placed the child in a child seat and drove the child to her son's residence. The mother lost consciousness several times in the hours following the assault, so the child again was placed at risk of harm due to the possibility that a motor vehicle accident could have occurred.
K.N.C. was adjudicated a neglected juvenile. Respondents were ordered to enter into and comply with a case plan, including attending parenting classes, obtaining and maintaining education or employment, obtaining and maintaining stable housing, obtaining psychological evaluations, staying in contact with social workers at least three times per week, completing substance abuse assessments and following all recommendations, submitting to random drug screens, and submitting to drug screens each Monday, Wednesday and Friday. Further, respondent-father was ordered to complete domestic violence counseling, and respondent-mother was ordered to complete one-on-one counseling with First Step for issues of domestic violence. The Consolidated Order of Adjudication and Disposition was filed on 18 September 2007. No appeal was taken from this order.
The trial court conducted review hearings on 13 November 2007 and 7 January 2008, and custody of K.N.C. was continued with DSS. On 5 February 2008, the trial court conducted a permanency planning review hearing. The trial court found that respondent-mother had taken four of eight requested drug screens, and tested positive for Xanax on one of these; that respondent-mother had pending criminal charges for simple possession of a schedule III controlled substance and six worthless check charges; that respondent-father was incarcerated on 10 July and 3 December 2007 and that he remained incarcerated; that respondent-father obtained a psychological evaluation on 20 August 2007 which contained an Axis II diagnosis of Borderline Intellectual Functioning; that respondent-mother attended supervised visitations except for the week of her positive drug screen; that respondent-father attended supervised visitations until his incarceration on 3 December 2007; and that K.N.C. easily separated from respondents at the end of visitations. For these reasons, the trial court concluded that reunification efforts with the parents should cease, and that the permanent plan should be adoption.
On 9 May 2008, DSS filed a Motion in the Cause to Terminate Parental Rights. DSS alleged that grounds existed to terminate respondents' parental rights because respondents (1) neglected K.N.C., and (2) willfully left K.N.C. in foster care or placement outside the home for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting the conditions which led to K.N.C.'s removal. The termination of parental rights hearing was held on 30 September and 21 November 2008. On 12 January 2009, the trial court filed an order terminating the parental rights of respondents on the grounds that respondents (1) neglected K.N.C., and (2) left K.N.C. in out-of-home placement for more than twelve months without making reasonable progress in correcting the conditions that led to the removal of K.N.C. from the home. From the trial court's order, respondents appeal.

II. Discussion
"Termination of parental rights is a two-stage proceeding." In re Brim, 139 N.C. App. 733, 741, 535 S.E.2d 367, 371 (2000). At the adjudicatory stage, the trial court must determine that at least one ground for termination exists pursuant to N.C. Gen. Stat. § 7B-1111. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In this stage, the burden of proof is on the petitioner, and the court's decision must be supported by clear, cogent, and convincing evidence. Id. A trial court's determination that at least one ground for termination exists will be overturned only upon a showing by the respondent that there is a lack of clear, cogent, and convincing competent evidence to support the findings. In re Allen, 58 N.C. App. 322, 325, 293 S.E.2d 607, 609 (1982). The trial court's "findings of fact are conclusive on appeal if they are supported by `ample, competent evidence,' even if there is evidence to the contrary." In re J.M.W., 179 N.C. App. 788, 792, 635 S.E.2d 916, 919 (2006) (quoting In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988)).
Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights unless it further determines that the best interests of the child require otherwise.
Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. "Once [the petitioner] has met its burden of proof in showing the existence of one of the grounds for termination, . . . the decision of whether to terminate parental rights is within the trial court's discretion." In re Allred, 122 N.C. App. 561, 569, 471 S.E.2d 84, 88 (1996) (citation omitted). "The decision to terminate parental rights is vested within the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the [trial court's] actions were manifestly unsupported by reason." In re J.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).

A. Grounds for Termination of Respondent-father's Parental Rights
Respondent-father argues that the trial court erred in concluding that grounds existed to terminate his parental rights based on neglect because the competent evidence failed to support the findings or the conclusion that neglect existed at the time of the termination hearing, or that there was a probability of future neglect.
A neglected juvenile is defined by N.C. Gen. Stat. § 7B-101(15) as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). If the child has been removed from the parents' custody before the termination hearing, and the petitioner presents evidence of prior neglect, including an adjudication of such neglect, then "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).
The trial court made the following pertinent findings of fact with respect to respondent-father:
10. The father did not provide substantial financial support or consistent care with respect to the minor child and the child's mother. He has been incarcerated during periods totaling approximately nine months since the original petition was filed, and although he has been employed, he was not providing substantial support when he was not incarcerated. He has provided some material support, including shoes and clothing.
. . . .
14. The father was incarcerated from May 14 or 15, 2007 to July 12 or 13, 2007, and was placed on probation. He appeared in court impaired on May 15, 2007. He tested positive for cocaine and benzodiazepines in a sample taken on August 18, 2007, and also tested positive for cocaine in a sample taken on September 10, 2007. As of September 28, 2007, the parents had been evicted. The father lived for a time in a motel in Statesville. By October of 2007, the father had moved to a location on Highway 16 in Taylorsville, which is in Alexander County.
15. The father was incarcerated from December 3, 2007, to February 12, 2008. He was reincarcerated commencing on April 30, 2008, and was released in late July of 2008.
. . . .
17. As of September 30, 2008, the father was on probation on a felony conviction and was charged with violating his probation due to nonpayment of fines. He had been on intensive probation for six months on a conviction of worthless checks, but was no longer on intensive probation as of September 30, 2008. As of September 30, 2008, the father had last seen the child over six months ago.
. . . .
21. The father obtained a psychological evaluation performed by Dr. Powell. [He] was tested on July 26, 2007, and on August 16, 2007, and the report is dated August 20, 2007. The report raises concerns concerning the father's capability, based on his personality, to properly care for a child. There are no indications of an active psychotic process occurring with the father. He functions in the borderline range of intellectual ability with a full scale IQ of 76; his difficulties appear to be due to his somewhat low intellectual level of functioning, and a personality style which predisposes him to using violence in response to challenges from other individuals. He has difficulty in understanding the motivations of other people. He believes that people in positions of authority are against him, and have it in for him and his immediate family. All of this would lead to some problematic behavior when it comes to taking care of the child. It is easy to comprehend how the child could be injured in a fight that was initiated while he was holding the child. The report concludes that the father could be more favorably treated through family therapy. Because the child is so young, however, the Court does not fault the father for not being involved in therapy with the child.
22. The father has undergone some anger management behavioral therapy at Catawba Valley Behavioral Health, as evidenced by Respondent's Exhibit 7. It recites that the father has had difficulty with anger management issues, but is making good progress with the use of medication and behavioral therapy. He attended therapy there for two hours per month until August of 2008, when his schedule was increased to two hours every two weeks. This constitutes some effort by the father, but overall, his efforts have not been substantial or sufficient.
23. The Court's observation of the father during the hearing has only confirmed the concerns expressed in the psychological evaluation. The father has been very guarded, belligerent, and has become agitated. He has been very argumentative at times and reluctant to answer questions properly. The court had to take a recess during the father's testimony in this hearing to allow him to calm down. Based on these observations, the father has not benefitted from anger management treatment. His criminal history shows that he has an anti-authority personality.
24. The father delayed obtaining a substance abuse assessment. Whether the assessor in the father's substance abuse assessment was acquainted with the pertinent facts is questionable due to its [sic] recommending no treatment in view of the father's criminal history, the father's twice having tested positive for cocaine, and the father's having appeared in court intoxicated on May 15, 2007. He then was scheduled for several reassessments, but did not attend them. He has not obtained any substance abuse treatment since at least September of 2007, and testified that he had not done so because he didn't have time.
25. The father failed to try to follow the directions by the agency and the Court. The father fails to understand the impact on the child of his being in jail for long periods, and lacks insight into the impact of his criminal activity and his domestic violence issues. Further, the father's probation was revoked and his sentence was activated.
. . . .
28. The father is likely to continue to have issues with substance abuse, noncompliance with the law, and domestic violence, and the father doesn't seem to learn from his experiences. He therefore is unlikely to change in the foreseeable future.
Respondent-father argues the trial court erred in finding that grounds existed to terminate his parental rights where the only evidence presented by DSS was respondents' testimony and respondent-father's criminal record. Respondent-father contends that because the only testimony presented supports his position, DSS needed to present some affirmative evidence such as the testimony of a social worker or some other witness to refute respondents' testimony. Respondent-father relies on In re A.M., ___ N.C. App. ___, 665 S.E.2d 534 (2008), in which this Court concluded that the trial court failed to make an independent determination of neglect where it relied solely on the written reports of DSS and the guardian ad litem, prior court orders, and oral arguments by the attorneys involved in the case. A.M. is easily distinguishable from the case sub judice, however. Id. at ___, 665 S.E.2d at 536. In A.M., "DSS did not present any witnesses for testimony, and the trial court did not examine any witnesses." Id. Here, the trial court heard testimony from both respondents, and the court's findings of fact in support of its determination that respondent-father's parental rights should be terminated for neglect of K.N.C. are plainly based, in part, on respondent-father's testimony and demeanor.
Furthermore, the Court noted in A.M. that "this opinion should not be construed as requiring extensive oral testimony. We note that the trial courts may continue to rely upon properly admitted reports or other documentary evidence and prior orders, as long as a witness or witnesses are sworn or affirmed and tendered to give testimony." Id. Thus, it was not necessary for the trial court in this case to receive additional testimony to conduct "a proper, independent termination hearing." Id.
The case sub judice is also distinguishable from In re N.B., ___ N.C. App. ___, 670 S.E.2d 923 (2009), in which this Court held that the trial court failed to make an independent determination of neglect where the trial court's order was based on the court report, a statement by petitioner's counsel, and the testimony from one witness, the respondent-mother. Id. at ___, 670 S.E.2d at 926. Our Court held that "the testimony of respondent-mother was not sufficient in this case to carry [t]he burden [which] is on the petitioner to prove the allegations of the termination petition by clear, cogent, and convincing evidence. Respondent-mother's direct testimony refuted petitioner's allegations, and petitioner did not cross-examine her." Id. (internal quotation marks and citation omitted).
The present case is easily distinguishable from N.B., as petitioner conducted a thorough cross-examination of respondents which enabled the trial court to make an independent determination of neglect. The evidence presented at the termination hearing, including respondents' testimony, tended to show that since the initial petition was filed, respondent-father was incarcerated for periods of time, and on probation at all times after 5 March 2007. Respondent-mother testified that respondent-father was the main provider for the family and things were difficult with respondent-father being in jail. Although respondent-father testified that he worked during the periods he was not incarcerated, he admitted that he had not paid money for K.N.C.'s support. Ultimately, respondent-father testified that he did not "feel [his] incarceration or [his] charges or [his] being locked up [had] anything to do with a TPR hearing for [K.N.C.]" Respondent-father also continued to deny that any domestic violence occurred between himself and respondent-mother in the past, even though domestic violence was the reason for K.N.C.'s removal from respondents' custody.
Respondent-father also argues that the permanency planning order of 5 February 2008 and the psychological evaluation were not properly before the trial court because they were not offered into evidence at the termination hearing. Respondent-father's argument ignores the fact that at the beginning of the hearing, the trial court agreed to consider the findings in the prior orders, which included the permanency planning order and the psychological evaluation, at the appropriate time, under the guidelines set out in In re J.W., 173 N.C. App. 450, 619 S.E.2d 534 (2005), aff'd per curiam, 360 N.C. 361, 625 S.E.2d 780 (2006). J.W. provides that "[a] court may take judicial notice of earlier proceedings in the same cause." Id. at 455-56, 619 S.E.2d at 539-40. (internal quotation marks and citation omitted). Thus, the permanency planning order and the psychological evaluation were properly admitted into evidence and considered by the trial court.
Respondent-father argues in the alternative that the competent evidence does not support the trial court's factual finding regarding his psychological evaluation.[1] Respondent-father contends that the psychological evaluation indicates he satisfied the evaluation's recommendation that he attend family therapy with K.N.C. and respondent-mother in lieu of parenting classes or individual psychotherapy. Because the trial court indicated at the conclusion of the termination hearing that family therapy would not be beneficial because of K.N.C.'s young age, respondent-father concludes he satisfied the recommendation of the psychological evaluation.
Respondent-father's argument misses the mark. Respondent-father's entire psychological evaluation was properly before the trial court and the evaluation supported the trial court's factual findings. Moreover, the trial court established the terms of respondent-father's case plan, and it is undisputed that he failed to substantially comply with that plan. Accordingly, respondent-father's argument regarding the psychological evaluation is overruled.
Respondent-father also argues that it was error for the trial court to find that he had failed to address his domestic violence and anger management issues based on contentious in-court exchanges between respondent-father and counsel. We disagree.
The demeanor of a witness on the stand is always in evidence. All of the findings of fact regarding respondents['] in-court demeanor, attitude, and credibility . . . are left to the trial judge's discretion. Therefore, any of the findings of fact regarding the demeanor of any of the witnesses are properly left to the determination of the trial judge, since [he] had the opportunity to observe the witnesses.
In re Oghenekevebe, 123 N.C. App. 434, 440-41, 473 S.E.2d 393, 3989-9 (1996) (internal citation omitted). Accordingly, the trial court did not err in considering respondent-father's courtroom behavior in formulating its conclusions.
A careful review of the record shows that the trial court's findings of fact are based on clear, cogent, and convincing evidence. Respondent-father's failure to understand the impact of his criminal activities and incarceration on K.N.C., his failure to fully address his substance abuse issues, and his failure to address domestic violence issues support the trial court's determination that there is a reasonable probability of repeated neglect in the future if K.N.C. is returned to his care. We thus hold that the findings support the trial court's conclusion that grounds existed to terminate respondent-father's parental rights under N.C. Gen. Stat. § 7B-1111 (a)(1). Having concluded that one ground for termination of parental rights exists, we need not address the additional ground found by the trial court. Brim, 139 N.C. App. at 743, 535 S.E.2d at 373.

B. Grounds for Termination of Respondent-mother's Parental Rights
Respondent-mother argues that the trial court's findings of fact do not support the conclusion that she neglected K.N.C. and that the neglect was ongoing.
With respect to respondent-mother, the trial court made the following pertinent findings of fact:
12. The petition was filed due to domestic violence issues. The father assaulted the mother on January 25, 2007, resulting in the mother's having to go to the emergency room to have staples placed on a cut in her head. The minor child was present during the assault and was at risk of harm. After the assault took place, while the mother was bleeding, the mother placed the child in a child seat and drove the child to her son's residence. The mother lost consciousness several times in the hours following the assault, so the child again was placed at risk of harm due to the possibility that a motor vehicle accident could have occurred.
. . . .
29. The mother, on multiple occasions, has had to rely on friends for places to stay. She has moved multiple times since the original petition was filed.
30. The mother was not in court at the hearing on November 21, 2008.
. . . .
32. The mother attended seven of twenty recommended parenting classes; only three absences are allowed in order to satisfactorily complete the parenting classes. She did not meet the parenting class requirement as ordered on February 5, 2008.
33. Although the court was emphatic at disposition that both parents get psychological evaluations, the mother has not obtained one. She cancelled or did not appear for appointments to obtain one, and did not complete the required testing. The mother ascribed her failure to complete it to her not getting along with the evaluating psychologist. No complete psychological evaluation has been provided to the Court.
34. Although the mother has not tested positive on a drug screen since September of 2007, the mother has not obtained a substance abuse assessment and has not completed substance abuse treatment, which she needed; she tested positive for marijuana some four times.
35. There is no evidence that the mother has obtained a G.E.D.
36. As of September 30, 2008, the mother was on criminal probation for obtaining property by false pretenses.
37. The mother did not complete a domestic violence assessment.
38. The mother has sought treatment for anxiety. The mother did not attend counseling with Karen Brown.
39. The above findings of fact constitute neglect, and support a strong likelihood and probability that neglect would continue if the child were returned to the home of the parents at this time, or at any time in the forseeable [sic] future.
Of the above findings, respondent-mother challenges only findings of fact 29, 32, 33, 34, 38, and 39. The unchallenged findings are presumed to be correct and supported by competent evidence. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982), appeal dismissed, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983). Although Respondent-mother challenges finding 32, she states that this finding is technically correct, but she did not have the funds to complete parenting classes. Respondent-mother also concedes that finding 38 is true, but she argues that this finding alone is insufficient to establish ongoing neglect. Because Respondent-mother admits that findings of fact 32 and 38 are true, these findings will be deemed unchallenged and presumed to be correct. Furthermore, the trial court's determination of ongoing neglect was not based solely on finding of fact number 38.
Respondent-mother argues that finding 29 is inaccurate. Respondent-mother's testimony established that she had moved three times in an eighteen-month period. She further testified that while respondent-father was incarcerated in December 2007, she needed a place to stay. She stated that she could have stayed with an adult male friend, but did not believe it was appropriate. We find there is competent evidence to support finding 29.
We also find there is competent evidence to support finding 33. In the disposition order, respondent-mother was ordered to obtain a psychological evaluation. Respondent-mother testified that she left without completing the evaluation because she did not get along with Dr. Powell. She wanted to be evaluated by another psychologist, but never attended an evaluation with another psychologist.
Furthermore, finding 34 is supported by competent evidence. Respondent-mother testified that she tested positive for marijuana four times. She admitted that she did not finish the substance abuse assessment. She also had not completed any substance abuse treatment since March of 2007.
Respondent-mother's failure to complete parenting classes, her failure to fully address her substance abuse issues, and her failure to address domestic violence issues support finding 39, that there is a strong likelihood and probability that neglect would continue if K.N.C. were returned to the home.
We conclude from a careful review of the record that the trial court's findings of fact are based on clear, cogent, and convincing evidence. Moreover, the findings support the trial court's conclusion that grounds existed to terminate respondent-mother's parental rights under N.C. Gen. Stat. § 7B-1111 (a)(1). Thus, we need not address the additional ground for termination of respondent-mother's parental rights found by the trial court. Brim, 139 N.C. App. at 743, 535 S.E.2d at 373.

C. Termination of Respondents' Parental Rights
Respondents both argue that the trial court abused its discretion in terminating their parental rights. Respondent-father argues that the trial court abused its discretion in terminating his parental rights because (1) grounds for termination were not established, and (2) the dispositional evidence showed that he continued to remain clean of controlled substances, he did not have additional incidents of domestic violence, and he had a strong bond with K.N.C.
Similarly, respondent-mother argues that the trial court abused its discretion because there is reasonable hope that the family unit can reunite and provide for the emotional and physical welfare of K.N.C. within a reasonable period of time.
Once statutory grounds for termination have been established, the trial court is required to "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2007). "[W]here there is reasonable hope that the family unit within a reasonable period of time can reunite and provide for the emotional and physical welfare of the child, the trial court is given discretion not to terminate rights." Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910. In making this determination the trial court is required to consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007). "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910. The trial court's decision to terminate parental rights is subject to reversal only where it is "manifestly unsupported by reason." Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).
We have already determined that grounds for termination were established. Review of the termination order reveals the trial court made findings on disposition which show it properly considered the statutory factors set forth in N.C. Gen. Stat. § 7B1-110, as follows:
5. The child's age is two and ½ years.
6. The child is already in an adoptive placement, and is likely to be adopted.
7. The child's permanency plan is adoption, and termination of parental rights will aid in the accomplishment of the permanency plan.
8. There is not a strong emotional bond between the child and the parents, as evidenced by the fact that the child has formed a child to parent relationship with the placement providers after being placed with them only since September of 2008.
9. The relationship between the child and the placement providers is strong, as the child is addressing them as "Mommy" and "Daddy" after being placed with them only since September of 2008 and needing the placement mother to accompany her on trips for visitation.
Moreover, the evidence shows that the parents did not acknowledge their domestic violence issues. In fact, respondents denied having any domestic violence issues. Additionally, both failed to fully address their substance abuse issues. Respondent-mother did not complete parenting classes, while respondent-father never attended parenting classes. Respondent-father failed to understand the impact of his criminal history on K.N.C. Therefore, we conclude that the trial court made a reasoned decision and did not abuse its discretion in determining that terminating respondents' parental rights was in K.N.C.'s best interests.
Accordingly, we affirm the trial court's order terminating respondents' parental rights.
AFFIRMED.
Judges STROUD and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] See finding of fact number 21, supra.